Florence M. Duffy

*vs.*

Loft Incorporated, a corporation of the State of Delaware.

*New Castle April* 29, 1930.

*Hastings, Stockly & Morris*, for petitioner.

*Paul Leahy, and Richard B. Tippitt, and Derby A. Lynch*, of Baltimore, Md., for Miller faction.

*George N. Davis, Charles C. Keedy, and Clarence A. Southerland*, and *Arthur F. Driscoll*, of New York City, for Guth faction.

THE CHANCELLOR. The argument has reduced the questions involved in this cause to two in number.

1. The first question is whether the meeting which convened on March 19th was an invalid one because of the fact that Mr. Miller, the incumbent president of the corporation, was not allowed to preside after the meeting was convened. A stenographic report of the meeting was made and the stenographer's transcript of his notes is conceded by both factions to be as faithful an account of what transpired as it was possible for any person to get in the midst of the confusion that was at times prevalent. The rival factions had been engaged, prior to the meeting, in a rather strenuous campaign for proxies and as soon as the meeting started, that happened which so often happens on such occasions, namely, the spirit of contest which the proxy campaign had engendered began to show itself. The president, Mr. Miller, at the hour of twelve, the time designated in the call for the convening of the meeting, appeared and commenced to address the gathering of from 250 to 300 people there assembled. He did not get far before he was asked to proceed in accordance with the by-laws. He replied that he had not yet called the meeting. There then followed a great amount of discussion and argument. Whether the president formally opened the meeting or not, is of no moment, for stockholders were present in response to the call and the president as a matter of fact made rulings from the chair. Of course it was not in the power of the

president to prevent the meeting by refusing or neglecting to formally announce its opening.

The first controversy that engaged the attention of the meeting presented the question of who should preside. The president insisted that under the by-laws he was the only one entitled to preside. Stockholders on the floor moved that a chairman be selected by the meeting. The president ruled the motion out of order and insisted that the first thing to be done was to call the roll to see if enough stock was present either in person or by proxy to constitute a quorum. For page after page of the stenographic report the discussion of this question continued. Nominations were made for chairman, the president at one point stating that a "Mr. Sawyer has been nominated over here." There were several nominations, but the president would not put them to a vote. Finally a Mr. Donald arose from the floor and asked all that were in favor of the nominee, Dr. Sullivan, to stand. Practically all present stood up. Some time thereafter Dr. Sullivan took the chair and Mr. Miller, with some of his following, left and went to their offices at the other end of the room, taking a stock list certified by the transfer agent with them. Mr. Miller at all times refused to recognize the right of the meeting to choose a chairman and repeatedly declared all attempts to elect one to be out of order on the ground that under the by-laws he as president was entitled to preside.

Was he right in this contention? It is necessary at this point to refer to the by-laws. They provide, in one place that "the president shall preside at all meetings of the stockholders, unless the stockholders shall appoint a chairman, who may be the president." Another by-law provides for the order of business at a stockholders' meeting as follows:

(1) Call to order;

(2) Election of a chairman, if necessary;

(3) Presentation of proofs of the due calling of the meeting, etc.;

(4) Presentation and examination of proxies;

(5) Reading of prior minutes;

(6) Reports of officers;

(7) Election of directors, when that is the purpose of the meeting;

(8) Unfinished business;

(9) New business;

(10) Adjournment.

Mr. Miller evidently noticing the phrase in the second order of business "if necessary," took the position that the election of a chairman was not necessary and therefore all motions looking to such election were out of order. This position was untenable. The language of the by-law first above quoted giving the right to preside shows this to be so. It imposes a limitation on his right which is—"unless the stockholders shall appoint a chairman." The presence of the president ready and willing to preside cannot be said to oust the stockholders of their right to choose a chairman on any such theory that the president's presence makes such choice unnecessary, for the plain reason, if no other, that the by-law proceeds expressly to say that the stockholders may choose the president himself as chairman, a thing which if done bespeaks his presence, and therefore negatives the idea that his absence is a prerequisite to the right of the stockholders to elect. The by-law that deals with the order of business —"election of a chairman, if necessary"—must be construed in harmony with the other by-law giving the stockholders the right to choose a chairman. It can be so construed by holding the necessity of an election of a chairman to arise when a stockholder moves to choose one. The president was in error, therefore, when he repeatedly refused the demand of the stockholders that the meeting elect a chairman.

A chairman was elected in the manner above stated. In view of the president's refusal to put the motion, and of his disregard of the overrulings of his decisions on appeals, the stockholders could resort to no other course than they did, namely, vote on the motion when put to them by one of their fellows. They did so and I can find no legal objection to their course in that regard.

But, assuming that the stockholders had the right to choose a chairman, yet it is argued the choice they made was by a *viva*

*voce* vote and under the by-laws it should have been by a vote of shares and by ballot. The by-laws contain a provision which answers this argument. It is as follows:

"The vote in election of directors, and, upon demand of a stockholder present in person or by proxy, the vote on any question, shall be by a stock vote and by ballot."

This by-law clearly implies that upon all votes other than upon directors, the vote shall not be a stock vote unless a demand is made by a stockholder for such a vote. In view of the particular language of the by-law it is not necessary to refer to the contention that the Guth faction puts forth to the effect that, under general law, votes directed to such a question as the chairmanship of the meeting are to be taken *viva voce* and not by shares.

The language of the by-law in this case is such as to differentiate the case from *Proctor Coal Co., et al., v. Finley*, 98 *Ky.* 405, 33 *S. W.* 188, 190, which is relied on so confidently by the solicitors for the Miller faction, for in the cited case the by-laws provided that "at stockholders' meetings, each stockholder shall cast one vote for each share of stock owned by him," and there was no language from which an exception to the method of voting by shares was inferable as here.

The question arises then, was a demand for a stock vote made so as to render a *viva voce* vote on the chairmanship improper under the by-law. A careful reading of the minutes of the meeting fails to show such a demand. It is true that there were repeated demands by the president for a call of the roll. But his demands in this regard were always for the purpose of seeing whether a quorum was present. He never demanded a stock vote on the question of chairman. Such a demand would have been inconsistent with his oft-asserted position that it was out of order to elect a chairman. His demand for a roll call for quorum purposes was a demand that would have been proper under the fourth order of business (*supra*), an order of business that came after the election of a chairman. This fact was pointed out to him in response to his insistence upon a roll call. I repeat that he never demanded that the vote upon the chairmanship should be by stock. Neither did any one else.

Dr. Sullivan's choice as chairman was therefore not in violation of the by-laws.

This conclusion makes it unnecessary to consider whether, if the chairman had been elected in violation of the by-laws, the subsequent proceedings of the meeting under his chairmanship would have been null and void, a question which was argued.

2. The next question is whether or not a quorum was present for the transaction of business. If none was present, the attempted election of directors was a vain proceeding. The question of whether a quorum was present is admitted to turn on whether or not 232,840 shares for which the Miller committee held proxies can be properly counted as present. If they were, a quorum was present; otherwise there was no quorum.

Proxies for those shares ran in favor of "Alfred R. Miller, Charles R. Stevenson and/or Edward Gray, Jr.," and appointed these gentlemen the "true and lawful attorney or attorneys, agent or agents, and proxy or proxies of the undersigned, with power of substitution, for, and in the name, place and stead of the undersigned to attend the annual meeting of the stockholders * * * and then and there to vote all stock held or owned by the undersigned * * * to represent and to vote all shares of stock of the undersigned, according to the number of votes which the undersigned would be entitled to cast if personally present. * * * "

The proxies held by the Miller committee were never presented to the meeting. The record fails to show where they were at the time of the meeting. They are now in this court, however, having been produced in response to an order in that behalf, so that there can be no doubt upon the fact that 232,840 shares of stock had designated the three gentlemen known as the Miller committee to attend the meeting as their agents and to vote thereat.

Furthermore, the designated agents were in fact present at the meeting. Two of them, Messrs. Miller and Gray, were stockholders of record. Mr. Stevenson, however, was not. Unless therefore he was there in his representative capacity as a member of the proxy committee, he had no right to be present. He took an active part in the events of the day. So did Mr. Gray; and of course Mr. Miller in a much larger degree. Mr. Miller at one

stage of the proceedings stated that he was representing a great many stockholders, by which statement it is to be inferred that he was representing stock for which he was one of the three proxies.

The proxies which the Miller committee gathered were obtained from stockholders as the result of solicitation by correspondence and otherwise. It was the manifest intent and desire of the stockholders who gave the proxies to have their designated agents or attorneys-in-fact attend the meeting and vote in their behalf. In so far as the stockholders could, without personal attendance, accomplish their presence at the meeting, they are to be thought of as having intended to do so when they gave their proxies. It is furthermore to be assumed that they thought the persons who had solicited from them the right to act as agents in their behalf would, when the agency was conferred, be duly accepted and the duties inherent in the relationship be duly performed.

I take it, however, that it cannot be held that the stockholders who gave proxies notwithstanding the assumption of an intent on their part that the proxies would be acted upon, by the mere entertaining of such an intent can permanently fasten the relationship of agency upon those named in the proxies so that the latter cannot refuse to act. An agent can always abandon his agency at the expense of assuming the risk of liability if the circumstances are such that the law attaches liability.

And so in this case, the Miller committee was free, if it saw fit, to abandon the agency and fail to act under it, notwithstanding it had solicited the relationship and the principals had sought to confer it. But it would seem to be reasonable to say that where an agency of the present sort has been sought, and freely conferred, strict and exacting proof of its assumption in action ought not to be required; or, conversely, relatively slight circumstances ought to justify the conclusion that a solicited agency when granted was assumed and acted on when the occasion for its exercise and the agent is present participating in some way in the business with which the proposed agency is concerned.

In making these remarks I am speaking only of the particular sort of agency we are here dealing with, viz., an agency commonly called a proxy. The paper writing which we call a

proxy is nothing more than evidence of a relationship. It is not the relationship. It simply testifies that A. has constituted B. his agent to act for him in a vicarious capacity. The producing of the proxy is not the creation ot the agency. It is only proof of it to the satisfaction of others. So in this case the failure of the Miller faction to produce and file their proxies did not of itself destroy their attorneyship. Their omission in this regard simply amounted to this, that they did not show to the meeting the documentary evidence of their authority. The proxies, however, evidencing the extent of their authority are now in this court and it appears that as a matter of fact they had been constituted the spokesmen for 232,840 shares. This is a fact and failure to show the written evidence of it at the meeting cannot destroy it as a fact.

The statute of this State under which the corporation was created provides that directors shall be elected at an annual meeting of stockholders. The duty to hold such a meeting and to elect directors thereat is one that is laid by the statute. So important is the direction that this duty be performed that in some instances courts have brushed aside all strictness and technicality of view in the interest either of securing a statutorily commanded election or, if one has been sought to be held, of sustaining its results. In the case for instance of *In re Cedar Grove Cemetery Co.*, 61 *N. J. Law*, 422, 39 *A.* 1024, the court found the result of an election by assembling the polls of two rival meetings and ascertaining from the combination of both who had received a majority of votes. And in *Lutz v. Webster*, 249 *Pa.* 226, 94 *A.* 834, an election was ordered in face of the fact that four-fifths of the outstanding stock was necessary for a quorum and the holder of more than one-fifth was defeating a quorum by absenting himself as he had been doing for three years. This individual was as stated by the court setting up the by-laws to defeat what the law required—the holding of an annual meeting. An election was ordered to proceed regardless of the by-law provision touching a quorum. The same solicitude in behalf of the statute's provision directing an election of directors at the meeting designated for that purpose, underlies the ruling that where once a quorum is present it cannot be broken

by withdrawals. *Hexter v. Columbia Baking Co.*, 16 *Del. Ch.* 263, 145 A. 115, applies the principle to a situation of that sort.

Reasonable rules ought to prevail in aid of the accomplishment of the statute's purposes, and a certain degree of liberality in favor of a meeting ought to prevail. To take any other view would be to encourage the prolongation of internal strife between rival factions and keep the corporation's affairs in such a state of confusion and turmoil that the business which it was organized to conduct would inevitably suffer to the damage of its stockholders. Where an extensive campaign has been carried on by rival groups for the votes of stockholders and the arguments *pro* and *con* have been made, the parties interested should submit to a count and let the majority prevail. If such a course is not pursued, if, after the contest has been waged, one side defeats a decision by mere tactical maneuvers, the whole business must be gone through with again with its consequences of expense and disturbance. And in many instances the situation will simply be one where the side that appears to have lost will resort to schemes in order to create an opportunity for a second try in the hope that perhaps better success might be had the next time. Thus the corporation's affairs, their peaceful and undisturbed administration will be subordinated to the factional interests of rival contenders.

In light of the foregoing, it appears to me that in passing upon questions of this kind, the court should indulge in every reasonable intendment in favor of the conclusiveness of the meeting. With this attitude of mind, I am of the opinion that under the evidence the meeting in question should be regarded as one that started off with a quorum present. That means that the shares for which Mr. Miller and his associates held proxies were present. The proxies were solicited on the theory that the shares represented by them would be represented at the meeting and the agents designated to represent them were in fact present having a great deal to say. One of these agents, unless he was present and acting in a representative capacity was an intruder, and another one of them specifically admitted he was representing a great many shares. The absence or failure to show the written evidence of their authority, as already stated, cannot destroy

the fact of its existence. The evidence of it is before the court in the shape of the proxies themselves. The agents named in them disagreed with the method of procedure and after having made their contentions and suffered defeat, walked out. They were not justified in the position they had taken. Had they been the owners of the stock represented by their proxies, under the ruling in *Hexter v. Columbia Baking Co., supra,* their withdrawal would not have the effect of breaking the quorum. The fact that they were not the owners but only the representatives of the owners does not, under the circumstances shown, make any difference in the result. As they had the power and did take their principals into the meeting, so they could not take them out of the meeting, just as the principals could not have legally taken themselves out if they had been personally present and had done what their representatives did.

If it be suggested that Miller and Gray, two members of the Miller proxy committee, were stockholders in their own right and that if it is proper to count them as present for quorum purposes, they should be so counted only in their individual stockholder capacities and not in their representative capacities, the question arises why so—why not on the other hand reject their role of individuals and accept their role as agents? I think they must be regarded as present in both capacities. Miller as much as said so and the third associate not being a stockholder of record, necessarily was there in a representative capacity. It would be unreasonable to say that even if Miller and Stevenson were present as proxies or agents, Gray, their minority associate, was not.

It being agreed that if the shares represented by the Miller committee can be counted as present for quorum purposes, the Guth directors were elected, it is unnecessary for me to proceed with an analysis of the vote.

Order accordingly.

NOTE:—On appeal the Supreme Court affirmed the decree entered in accordance with the foregoing opinion. See *post p.* 376.