**GREENSBORO PROFESSIONAL BASEBALL CLUB, INC.,**
Plaintiff,

v.

**SOUTHERN LEAGUE OF PROFESSIONAL BASEBALL CLUBS, INC. and Jimmy Bragan, Individually and as President of Southern League of Professional Baseball Clubs, Inc., Defendants.**

No. C–87–863–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

March 9, 1988.

Bynum M. Hunter and Bruce P. Ashley, Greensboro, N.C., for plaintiff.

Robert D. Dearborn and Matthew R. Joyner, Charlotte, N.C., for defendants.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court upon both parties' motions for summary judgment. The parties have fully briefed the issues and addressed the matters in a hearing before this court. The motions are now ready for ruling. The court grants defendants' motion for summary judgment and denies plaintiff's motion.

### Procedural History

On November 20, 1987, plaintiff filed this action in the North Carolina General Court of Justice, Superior Court Division in Guilford County, seeking declaratory and injunctive relief and money damages. Plaintiff requested that this court find that the vote taken at the October 24–25, 1987 Southern League Annual Meeting was five in favor of and three against, instead of the four to four vote that the defendants maintain is correct, with respect to the sale of the Columbus Baseball Club, Inc. to plaintiff Greensboro Professional Baseball Club, Inc.

On November 20, 1987, the state court entered a Temporary Restraining Order effective until December 10, 1987, which restrained defendants from taking any action interfering with the sale of the Columbus club to plaintiff. On December 8, 1987, defendants removed the case to this court pursuant to 28 U.S.C. § 1441(a) (1973) and moved to dismiss based on grounds of *forum non conveniens* or, in the alternative,

to change the venue to Alabama. On December 14, 1987, plaintiff filed for partial summary judgment. On December 30, 1987, this court heard arguments on the motions and denied defendants' motion while enjoining both parties from changing the status quo. On January 19, 1988, plaintiff filed a motion to strike allegations in defendants' amended answer pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, which the court granted on February 29, 1988.

On January 29, 1988, defendants filed a motion for summary judgment which, along with plaintiff's motion for partial summary judgment, is the subject of this opinion. A hearing was held on the motions on February 29, 1988.

### Factual Background

Defendant Southern League (League) is an Alabama corporation and a professional baseball Class AA minor league composed of ten teams located in six southern states. Defendant Jimmy Bragan is an Alabama resident who is president and chairman of the Board of Directors of the League. Plaintiff is a Tennessee corporation with its principal office in Greensboro, which operates the Greensboro Hornets, a Class A team in the Class A South Atlantic League. Larry Schmittou is the president of the plaintiff corporation.

On October 24–25, 1987, the League held its annual meeting. Prior to the meeting, Ms. Francis Crockett Ringley, owner of the Charlotte franchise, appointed Art Clarkson, a member of the League, to act as her proxy and to vote "Yes" for the sale of the Columbus franchise to the plaintiff. The proxy was presented and filed at the League's meeting in accordance to the League's constitution and by-laws. During the meeting, the members voted nine to zero to accept the proposed sale of the Charlotte franchise to George Shinn. After the vote, Shinn voted as the representative of the Charlotte franchise even though the sale of the franchise to him was not finalized until after the meeting. Subsequently, the League voted on Schmittou's proposal to sell the Columbus franchise

to plaintiff. Columbus, the assignor franchise, was ineligible to vote under the League's constitution. Schmittou voluntarily refrained from casting the vote of the Huntsville franchise, of which he was a co-owner, to avoid the appearance of a conflict. Clarkson failed to vote the proxy of Ms. Ringley on the issue. The League's records show that the vote on the proposed transfer was four to four, which included a vote cast by Shinn against the transfer. Bragan rejected Schmittou's request that another vote be taken on the proposed transfer.

### Discussion

Standing

■ The court finds that plaintiff has standing and that a non-profit corporation's actions are subject to judicial review under appropriate circumstances under Alabama law, which is the applicable law since this is a diversity action in which the internal operation of an Alabama corporation is at issue. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Restatement (Second) of Conflicts of Laws § 302(2) (1971). In *Medical Society of Mobile County v. Walker,* 245 Ala. 135, 16 So.2d 321 (1944), plaintiff, a member of the defendant non-profit corporation, alleged that despite two doctors' failure to gain the necessary vote of approval for membership required by the society's by-laws, the defendant's secretary was attempting to enroll the doctors anyway. Plaintiff sought to enjoin defendant's secretary from enrolling the doctors. Although the two doctors were not members of the defendant corporation, a majority of the court found that the doctors were "necessary parties." *Walker,* 245 Ala. at 140, 16 So.2d at 326. Also, the court noted when judicial review of a non-profit corporation's actions is proper: "A mandamus will issue in all cases to compel a corporation, or any particular officer, to perform any plain duty required by law in favor of a member or other interested party, whether such duty is imposed either by statute, charter, custom or contract." *Walker,* 245 Ala. at 139, 16 So.2d at 325.

The court finds *Walker* sufficiently analogous to this case. In this case, as in *Walker*, a party challenges a defendant's actions which are claimed to be in violation of the non-profit corporation's by-laws. In both cases, the court's decision on the appropriateness of the defendant's actions directly impinges on a non-member's possible membership in the corporation. The plaintiff in this case, just as the doctors in that case, has a vital interest in the matter since the question of its possible membership interest in the corporation is at stake; hence, the plaintiff in this case too should be considered a "necessary party" to any challenge to the League's vote on the Columbus transfer. Given these similarities, the court finds that plaintiff has standing and that this matter is appropriate for judicial review.

Proxy

 The crux of this case is plaintiff's assertion that Ringley's duly executed proxy was a vote in favor of granting plaintiff the franchise, regardless of whether Clarkson actually voted the proxy during the League's vote on the proposed transfer of the Columbus franchise. The court finds that plaintiff's contention lacks merit.

First, the court notes that plaintiff presents no precedent supporting its novel contention that a proxy votes itself. Although no case is directly on point, the court finds that the weight of relevant precedent suggests that a proxy holder must actually vote the proxy if it is to be counted.

No federal cases were found that were helpful on this issue; however, several state court decisions are instructive. One court stated that the mere "granting of a proxy does not in itself constitute the casting of a ballot until the actual vote is taken. A proxy is nothing more than the grant of authority to the person authorized therein to cast the ballot at the appropriate time." *Jaquith Co. v. Island Creek Coal Co.*, 88 N.J.Super. 244, 211 A.2d 812 (1965). The fact that Crockett's proxy was duly recorded and that Clarkson voted it on other issues, does not mean that it voted itself

on the transfer issue, for as one court stated: "[P]hysical presence of proxies at a shareholders' meeting does not necessarily impart their own use." *Commissioner of Banks v. Cosmopolitan Trust Co.*, 253 Mass. 205, 148 N.E. 609, 613 (1925).

 Although Clarkson did not vote the proxy, his inaction does not expose the League to any possible liability. One court has noted that the failure of a proxy holder to exercise his duty only subjects him to potential liability:

> [I]t cannot be held that the stockholders who gave proxies, notwithstanding the assumption of an intent on their part that the proxies would be acted upon, by the mere entertaining of such an intent can permanently fasten the relationship of agency upon those named in the proxies so that the latter cannot refuse to act. An agent can always abandon his agency at the expense of assuming the risk of liability if the circumstances are such that the law attaches liability. And so in this case, the [proxy holder] was free, if it saw fit, to abandon the agency and fail to act under it, notwithstanding it had solicited the relationship and the principals had sought to confer it.

*Duffy v. Loft*, 17 Del.Ch. 140, 151 A. 223 (1930).

The court did not find precedent under Alabama law or the League's by-laws suggesting that a proxy votes itself. The court further notes that Crockett apparently did not assume her proxy voted itself either since the written proxy stated that Crockett "appoint[ed] Art Clarkson as my ... proxy, with full power ... to act, vote and execute" the proxy.

League's Vote

 The court first notes that it finds immaterial the parties' arguments over whether the League members' reasons for voting against the transfer were valid. The court is not concerned with whether the proposed ownership structure for plaintiff's franchise met League rules since the Alabama Supreme Court has held that:

> Membership in a voluntary association is a privilege which may be accorded or

withheld, and not a right which can be gained independently and then enforced. The courts cannot compel the admission of an individual into such an association, and if his application is refused he is entirely without legal remedy, *no matter how arbitrary his exclusion.* (Emphasis added.)

*Walker,* 245 Ala. at 138, 16 So.2d at 324. What is important is whether the League followed its own rules by allowing Shinn to vote. Section 5.01 of the League's by-laws states:

No person shall be qualified to act as a Director or to represent a club by proxy in a meeting of the Southern League *who is not an actual member of and officially connected with the Club he represents,* nor shall any Club, under any circumstance be represented by more than one person on the Board. Before the newly elected President or representative of the Club shall be elected and constituted a member of the Board of Directors of the Southern League, he shall have received a majority vote of the Directors of the League, and no representative of any Club shall be entitled to participate in the meetings or proceedings of the League before and until he has been elected and qualified as hereinabove provided. (Emphasis added.)

Shinn was not a member since the transfer of the Charlotte franchise to him did not occur until a few days after the meeting. Hence, Shinn's vote should not have been counted, thus making the League's vote four to three in favor of granting plaintiff the Columbus franchise. However, this outcome still does not entitle plaintiff to the franchise since plaintiff did not obtain a majority vote of the members as required by the constitution.

Majority Approval

The court notes that the League distinguishes between votes of members and votes of directors. Fundamental changes in the League requires votes of the members, whereas directors may vote on only two circumstances, neither of which affects the structure of the League. Section 3.06, which governs the vote on assignment of franchises, provides: "No assignment of membership will be accepted without the approval of a majority of the members of the League other than the assignor and only at the annual or a special meeting of the League." The constitution makes clear the number of votes needed and when such a vote can take place. The court finds without merit plaintiff's claim that the language of this document requires only a majority vote of those attending the annual meeting or special meeting at which the vote takes place. If that had been the intent, the constitution would have stated that only a majority of those attending the meeting need approve the transfer. Instead, the constitution states that a "majority of the members of the League" must approve an assignment. Section 3.01 of the League's constitution fixes the number of League members at ten. A majority of the eligible members, excluding the assignor club, would be five of nine. Hence, the four votes at the meeting in favor of assigning plaintiff the Columbus franchise were not a majority of the League members.

The court regrets that Schmittou chose not to exercise his right to vote on behalf of the Huntsville franchise since that would have given plaintiffs a majority. However regrettable, the court does not have the right to interfere and correct the bad judgment of a party. The court also notes that Bragan may have violated proper procedure by denying plaintiff's request for a recall vote the next day. However, the only proper judicial remedy would be a recall vote which, as plaintiff admitted during oral argument, would be useless since Shinn, instead of Ringley, is now the representative of the Charlotte franchise.

Equitable Estoppel

The court finds that plaintiff's equitable estoppel claim lacks merit. The $25,000 check that plaintiff gave to the League as security was premised on an expansion of the League in connection with a major league expansion. Furthermore, the granting of the franchise, assuming the expansion, was expressly contingent on the approval of the team's ownership struc-

ture. Since the major league did not expand, plaintiff had no claim to an expansion team and had a right to a refund of the $25,000. Whatever the reason for the delay of the refund, the $25,000 is unrelated to the League's rejection of plaintiff's attempt to become a League member by purchasing the Columbus franchise and, thus, cannot be the basis for equitable estoppel.

### Conclusion

For the foregoing reasons, the court grants defendants' motion for summary judgment and denies plaintiff's motion for partial summary judgment.