Ida May VOEGE, Plaintiff,

v.

AMERICAN SUMATRA TOBACCO CORPORATION et al., Defendants.

Harry Walter VOEGE et al., Plaintiffs,

v.

TOBACCO HOLDINGS, INC., et al., Defendants.

Civ. A. Nos. 2301, 2316.

United States District Court
D. Delaware.

April 23, 1965.

Aubrey B. Lank, Theisen & Lank, Wilmington, Del., Gustave B. Garfield, New York City, of counsel, for plaintiff.

Richard F. Corroon, Berl, Potter & Anderson, Wilmington, Del., Willkie, Farr, Gallagher, Walton & FitzGibbon, New York City, of counsel, for defendants.

STEEL, District Judge.

Plaintiff, Ida May Voege, brings Civil Action 2301 as the "owner" of 450 shares of American Sumatra Tobacco Corporation ("Old Company"), and has named as defendants "Old Company", Tobacco Holdings, Inc., ("New Company"), N. V. Deli Maatschappij ("Deli"), and George J. Fisher, the Register-in-Chancery of Delaware. Deli is incorporated under the law of The Netherlands, Old Company and New Company are incorporated in Delaware, and Fisher resides in Delaware. Jurisdiction is purportedly based upon § 27 of the Securities Exchange Act of 1934 ("Act of 1934") for alleged violations of Section 10(b) of that Act, and Rule 10b–5 promulgated thereunder.[1]

The Complaint alleges that the suit is brought individually and in a representative capacity on behalf of "all present stockholders of [Old Company] and all former stockholders of of [sic] the Common Stock of [Old Company] who have sold their shares pursuant to [an] offer to purchase said shares dated June 28, 1960."[2] The Complaint also alleges that the action is brought derivatively on behalf of Old Company because the latter, being under the control of the other defendants who are the wrongdoers, cannot enforce its rights.

[1] The Complaint also alleges jurisdiction under the diversity of citizenship provisions of 28 U.S.C. § 1331(a) and under § 1 of the XIV Amendment of the Constitution of the United States. Plaintiff has abandoned her claim of jurisdiction based upon diversity. (Plaintiff's Brief p. 2).

Previously this Court denied plaintiff's application for the convening of a three judge court under 28 U.S.C. §§ 2281 and 2284. Voege v. American Sumatra Tobacco Corp., 192 F.Supp. 689 (D.Del. 1961). It suggested, however, that if certain questions of Delaware law should be settled later by a Delaware Court in a particular way, the convening of a statutory three judge court might be proper (192 F.Supp. at p. 693). The disposition which is made of the case in the present opinion eliminates the necessity for considering the constitutional basis of jurisdiction, or considering anew the convening of a three judge court.

[2] Plaintiff did not sell her shares pursuant to that offer.

372

Defendants have moved under Fed.R. Civ.P. 12(b) (1) and (6) to dismiss the Complaint for lack of jurisdiction over the subject matter, and for failure to state a claim upon which relief can be granted.

The Complaint falls far short of alleging "a short and plain statement of plaintiff's claim as Fed.R.Civ.P. 8(a) requires. But interpreting it liberally in accordance with Fed.R.Civ.P. 8(f), the claims as alleged may be summarized as follows:

By a series of preconceived actions dictated by New Company and Deli which involved the use of the mails and other instrumentalities of interstate commerce, those two companies, as holders of the majority of the stock of Old Company, fraudulently brought about a merger between Old Company and New Company. Under the terms of the merger, minority stockholders of Old Company, including plaintiff, were required to surrender their stock in Old Company for $17 a share, a price grossly below its real value, to the end that New Company and Deli might appropriate to themselves assets to which the minority stockholders were entitled. This series of actions constituted a device, scheme or artifice to defraud the minority stockholders of Old Company in derogation of § 10(b) of the Act of 1934 and Rule 10b–5.

Without detailing the facts relied upon by plaintiff at this point, it is clear that if they are true, plaintiff is entitled to relief of some kind in some court. Indeed, defendants make no contention to the contrary. They simply argue that a federal court is not a proper forum because the protection accorded by Rule 10b–5 has application only when a device, scheme or artifice to defraud occurs, as the Rule expressly states, "in connection with the purchase or sale of [a] security." Defendants assert that plaintiff did not "sell" her stock either in connection with the acts of wrongdoing alleged or otherwise, and hence no rights could accrue to her under Rule 10b–5. This argument, it would appear, is advanced to negate both subject matter jurisdiction and the validity of the claim itself. Of course, if the Complaint alleges facts which, if proven, will establish a violation of Rule 10b–5, then it is obvious that jurisdiction exists by the express terms of § 27 of the Act of 1934.[3]

At the argument, plaintiff agreed with defendants that she could base no rights upon Rule 10b–5 unless she was a seller of securities. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), supports this view.[3a] Whether, when suit was begun, plaintiff had the status of a vendor of securities, requires a consideration of at least some of the details of the claim. In further summary the Complaint alleges:

Old Company was organized in 1926 under the name of American Sumatra Tobacco Corporation. Its principal business was the growing of shade-grown tobacco leaf used for wrappers in the manufacture of cigars. A collateral and secondary activity was the grazing of cattle and the sale of lumber. Old Company owned large and extensive holdings of real estate in Florida, Georgia, Connecticut and Massachusetts.

Between 1955 and 1960, Deli owned more than 50%, but less than 90% of the common stock of Old Company. As a result of a written offer of $17 per share which Deli made to stockholders of Old Company on June 28, 1960, it acquired in excess of 200,000 additional shares of Old Company stock. This gave Deli more than 90% of the stock of Old Company.

3. The contrary would not necessarily be so. Under the conditions stated in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), federal jurisdiction exists to decide whether a claim has been pleaded upon which relief can be granted, even though in fact no valid cause of action is alleged.

3a. Neither an affirmance or rejection of this interpretation of Rule 10b–5 is necessary in view of this Court's determination that plaintiff at bar was a "seller".

The offer of June 28, 1960 contained false and misleading statements and omitted to state material facts to the end that the true value of the stock which was substantially in excess of $17 per share should be concealed from the stockholders. Among other information which Deli withheld was the fact that it had seized for itself a valuable corporate opportunity which rightfully belonged to Old Company, that it had determined that the growing by Old Company of shade-grown tobacco leaf for cigar wrappers was an obsolete method of production, and that Old Company should cease large scale production of shade-grown leaf tobacco and dispose of its surplus lands not needed for such production. Deli failed to reveal that if such lands were liquidated in the normal course of events over a long period of time, say upwards of five years, stockholders of Old Company would receive a sum of money greatly in excess of $17 per share. The stockholders who accepted the offer of June 28, 1960, did so without knowing that the statements which it contained were false and misleading.

■ Having acquired more than 90% of the stock of Old Company, on October 21, 1960, Deli incorporated New Company in Delaware under the name of Tobacco Holdings, Inc. It then transferred all its shares in Old Company to New Company in exchange for all of the stock of New Company. Following this, Old Company was merged into New Company pursuant to the provisions of 8 Del.C. § 253, and the name of the New Company was simultaneously changed to American Sumatra Tobacco Company.[4] The merger was accomplished without the vote of the stockholders of Old Company.[5] Under the terms of the merger, the holders of stock of Old Company (other than New Company) received $17 per share in lieu of securities or other consideration.

Plaintiff elected not to accept the $17 per share but demanded an appraisal of all of her stock under 8 Del.C. § 262. After making the demand, plaintiff took no further action to obtain an appraisal and as yet her shares have not been appraised. Plaintiff made her demand, as did other persons holding approximately 8,000 shares of the stock of Old Company, in ignorance of the series of actions which had been taken by Deli and New Company to defraud the minority stockholders of Old Company.

Defendant's contention that plaintiff is not a purchaser or seller of securities, and that even if she is the wrongs alleged do not relate to the purchase or sale, will not withstand analysis.

■ Section 3(a) (14) of the Act of 1934 provides that when "sale" or "sell" is used in the Act, the terms each include "any contract to sell or otherwise dispose of." The charter of a Delaware corporation constitutes, among other things, a contract between the corporation and its stockholders, and between the shareholders *inter sese*. Lawson v. Household Finance Corp., 17 Del.Ch. 343, 352–353, 152 A. 723, 727–728 (1930); Duffy v. Loft, Inc., 17 Del.Ch. 140, 151 A. 223, aff'd, 17 Del.Ch. 375, 152 A. 849

---

4. Under Delaware law, Old Company could not have been merged into Deli since Deli was organized under the laws of a foreign nation. Braasch v. Goldschmidt, 199 A.2d 760, 763 (Del.Ch.1964). To make the merger possible it was necessary for Deli to incorporate New Company. Braasch v. Goldschmidt, supra, at p. 764 held that in the absence of fraud, the merger was authorized by 8 Del.C. § 253, even though New Company was created for that purpose, and 90% of its shares were owned by a corporation created under the laws of another nation.

5. 8 Del.C. § 253 authorizes, among other things, a subsidiary incorporated in Delaware to merge into a parent incorporated in Delaware when 90% of the subsidiary's stock is owned by the parent without any action on the part of minority stockholders of the subsidiary. All that the law requires is the adoption of a resolution by the Board of Directors of the parent directing that the companies be merged, and stating the terms and conditions of the merger and the filing and recording of a Certificate of Ownership and Merger in the office of the Secretary of State and Recorder of Deeds, respectively.

(1930); Morris v. American Public Utilities Co., 14 Del.Ch. 136, 122 A. 696 (1923); Peters v. United States Mortgage Co., 13 Del.Ch. 11, 114 A. 598 (1921). With exceptions not presently applicable, the provisions of the Delaware Corporation Law are a part of the charter of every corporation. 8 Del.C. § 364; Goldman v. Postal Telegraph, 52 F.Supp. 763 (D.Del.1943); Hartford Accident & Indemnity Co. v. W. S. Dickey Clay Mfg. Co., 26 Del. Ch. 411, 24 A.2d 315 (1942).[6] When plaintiff purchased her shares in Old Company in 1945, she agreed, by virtue of the terms of the Delaware Corporation Law, that if Old Company should ever merge, she would surrender her shares for whatever amount of cash or securities the merger agreement specified, or in lieu thereof, would accept their appraised value as determined in an appraisal proceeding.[7] Passing for the moment the significance of the plaintiff's right to have her shares appraised, in net effect when plaintiff bought her shares, she agreed that in the event of a merger the corporation surviving the merger should have an option to buy her shares at a price to be determined in the future.

■ The frauds allegedly perpetrated upon plaintiff were, in a very real sense, related to a vital part of the contract (the fixation of the purchase price) under which plaintiff had agreed to sell. They were committed "in connection with the purchase [and] sale" of a security within the meaning of Rule 10b–5.[8] Any other view of the transaction would defeat the purpose of Rule 10b–5, which, as stated in Hooper v. Mountain States Securities Corp., 282 F.2d 195, 202 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961) is "to keep the channels of interstate commerce, the mail, and national security exchanges pure from fraudulent schemes, tricks, devices, and all forms of manipulation."

■ Defendants assert that if the allegations of the Complaint are true, plaintiff, having sought an appraisal, can establish her rights in the appraisal proceeding and be paid for her stock whatever its true worth is proven to be. They argue that before plaintiff can obtain relief in this forum, 8 Del.C. § 262 (i) requires that she first establish that (1) no appraiser has been appointed within the statutory time, or (2) the appraisal proceeding has been judicially dismissed, or (3) the surviving corporation (New Company) has consented to the withdrawal of the appraisal demand. These are the three conditions which a stockholder who has demanded an appraisal must meet before he may withdraw his demand and exchange shares under the terms of a merger. Southern Production Co. v. Sabath, 32 Del.Ch. 497, 87 A.2d 128 (1951). None of these conditions are alleged to have occurred.

Braasch v. Goldschmidt, supra, relying upon Sabath, holds that one who has demanded an appraisal of his shares under the Delaware statute may not thereafter bring suit, based upon a common law cause of action, as a holder of such shares, either derivatively or in a representative capacity. According to the Court's rea-

---

6. See Clarke v. Golddust Corp., 106 F.2d 598, 601 (3rd Cir.), cert. denied, 309 U.S. 671, 60 S.Ct. 614, 84 L.Ed. 1017 (1939), which held that the merger provisions of the New Jersey Corporation Law must be read into the charter of a company organized under that law.

7. A third choice, judicially recognized, also existed; i. e., to seek relief in equity against a fraudulent exercise of the merger provisions, Porges v. Vadsco Sales Corp., 27 Del.Ch. 127, 32 A.2d 148 (1943); Cole v. Nat'l Cash Credit Ass'n., 18 Del.Ch. 47, 156 A. 183 (1931).

8. In H. L. Green Co. v. Childree, 185 F. Supp. 95 (S.D.N.Y.1960), the Court stated that a merger "may or may not involve a purchase and sale within the meaning of section 10(b) of the Act", and held that the merger before it did involve such a sale. But see Sawyer v. Pioneer Mill Co., 190 F.Supp. 21, 23 (D.Hawaii 1960), remanded 300 F.2d 200 (9th Cir.) cert. denied, 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962); National Supply Co. v. Leland Stanford Jr. University, 134 F.2d 689, 694 (9th Cir. 1943).

soning, this is because when the stockholder demands an appraisal he changes his stockholder status with respect to such shares, and becomes a creditor for their value.

█ But in the instant case plaintiff does not seek to withdraw her appraisal demand in order to surrender her stock under the merger, as was true of the plaintiff in the Sabath case. Nor is she attempting to assert a common law cause of action either derivatively or in a representative capacity, as was the situation in Braasch. Even under Delaware law when a merger is put through for the purpose of defrauding a stockholder, equitable relief will be granted without first requiring the stockholder to show the inadequacy of the appraisal proceeding. Porges v. Vadsco Sales Corp., supra; Cole v. Nat'l Cash Credit Ass'n, supra. While in the cited cases the stockholders had made no demand for an appraisal, had they done so in ignorance of the frauds, it is to be doubted whether the Court of Chancery would have closed its doors to them.

██ But whatever the result might have been in the Delaware court, the fact that the plaintiff in the instant case demanded an appraisal without knowing of the frauds of which she now complains, imposed upon her no duty to allege in this Court that her appraisal remedy would be inadequate. Plaintiff here is suing for the violation of rights given to her by federal law in a federal court which has exclusive jurisdiction to redress the statutory wrong. The rights and remedies provided by the Act of 1934 are "in addition to any and all other rights and remedies that may exist at law or in equity." Section 28(a), 15 U.S.C. § 78bb (a). Where, as here, federal rights are concerned, this Court is free to fashion federal law regardless of provisions of state corporation law. Compare J. I. Case Co. v. Borak, 377 U.S. 426, 434, 84 S.Ct. 1555, 12 L.Ed. 423 (1964).

█ Plaintiff's demand for an appraisal was not the election of a remedy which bars the instant suit. The demand, according to the Complaint, was made in ignorance of defendant's frauds. It was not an informed choice. Estate Counseling Services, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 303 F.2d 527 (10th Cir. 1962) is, therefore, inapposite.

█ Finally, defendants say that plaintiff's action must be dismissed because there is no allegation that she relied on the manipulative or deceptive devices alleged, as List v. Fashion Park, 340 F.2d 457 (2nd Cir. 1965), is said to require. It may be fairly inferred, however, that when plaintiff purchased her shares she did rely upon the honesty and fair dealing of New Company and those who controlled it. Every contract contains the implied condition that the parties to it will act in good faith and deal fairly with each other in its performance, 17 Am.Jur.2d Contracts § 256, p. 653. Plaintiff necessarily relied upon this all-important condition when, by acquiring her shares, she agreed with Old Company and its stockholders that Old Company could be merged upon terms later to be determined.

█ It may be conceded that Rule 10b–5 is inapplicable unless a seller has been deceived. See O'Neill v. Maytag, 339 F.2d 764 (2nd Cir. 1964).[9] Plaintiff at bar was the subject of deception for when she acquired her stock she did so upon the justifiable assumption that any merger would deal with her fairly, only later to find, according to the Complaint, that the terms of the merger were designed to defraud her.

In Barnett v. Anaconda Co., 238 F. Supp. 766 (S.D.N.Y.1965), relief under Rule 10b–5 was denied because the plaintiff failed to show a causal relationship between the fraud alleged and the injury claimed. The present Complaint discloses no such infirmity. The frauds al-

---

9. The Court stated that McClure v. Borne Chemical Co., 292 F.2d 824 (3rd Cir.) cert. denied, 368 U.S. 939, 82 S.Ct. 382,

7 L.Ed.2d 339 (1961), contains broad *dictum* to the contrary. 339 F.2d at 768.

leged culminated in the merger between Old Company and New Company under which plaintiff became obligated to sell her stock at $17 per share, when, according to the Complaint, it was worth substantially more. This would not have occurred in the absence of the frauds.

The Complaint prays that (1) a three judge court be convened under 28 U.S.C. §§ 2281 and 2284, (ii) the execution and enforcement of the merger between Old Company and New Company and appraisal proceedings in connection therewith be enjoined, (iii) all contracts of sale between stockholders of Old Company and Deli entered into as a result of Deli's offer to buy dated June 28, 1960, be declared void, (iv) defendants be enjoined from making any disposition of the assets formerly owned by Old Company, (v) a receiver be appointed for Old Company, (vi) defendants be directed to turn over Old Company's property to the receiver and to account for all corporate opportunities appropriated from Old Company, (vii) the receiver liquidate the Old Company's assets and distribute the same to its stockholders, and (viii) for other relief.

To what relief plaintiff will be entitled if the allegations of the Complaint are proved, need not now be decided. It is sufficient to say that plaintiff will be entitled to some relief. Where federally secured rights have been invaded and a federal statute provides for a general right to sue for that invasion, a federal court may use any available remedy to make good the wrong done. J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). This conclusion makes it unnecessary to determine at the present time whether under federal law the merger of Old Company into New Company is a bar to the assertion of a derivative right of action on behalf of Old Company, despite such effect being accorded to the merger under Delaware law in Braasch v. Goldschmidt, supra, 199 A.2d p. 767.

Nor is it necessary presently to determine whether plaintiff is entitled to represent any stockholders other than those who like herself have demanded an appraisal in ignorance of the alleged frauds committed against them. Defendants conceded at the argument that she is a proper representative of the latter class.

The views herein expressed are likewise applicable to the motion to dismiss Civil Action 2316.

The motion of defendants to dismiss the Civil Actions 2301 and 2316 will be denied.