**Charles P. LAWRENCE, Petitioner, Appellant,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent, Appellee.**

**No. 7084.**

United States Court of Appeals First Circuit.

Heard June 4, 1968.

Decided July 11, 1968.

---

Sumner H. Woodrow, Boston, Mass., with whom Chester C. Paris, Wakefield, Mass., was on brief, for petitioner.

David Ferber, Solicitor, with whom Philip A. Loomis, Jr., Gen. Counsel, Edward B. Wagner, Asst. Gen. Counsel, and Frank N. Fleischer, Washington, D. C., Atty., were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Petitioner appeals from a Securities and Exchange Commission finding that he had wilfully violated the anti-fraud provisions of the federal securities laws [1] and an order barring him for six months from associating with any broker or dealer and thereafter requiring that, if reemployed in the securities business, he be restricted to a non-supervisory capacity.

Petitioner, a branch office manager of a registered broker-dealer, had acted as a broker for a Mrs. Barber, the sole owner of the 100 shares of Seastores, Inc., a corporation operating a marina and a marine supplies store, which was in financial difficulties. He undertook to find a buyer or additional capital. He sought to interest another of his customers, one Penn. Penn showed no interest in purchasing a controlling share in Seastores, nor in a request by petitioner for a $10,000 loan to help petitioner pay creditors of his earlier broker-dealer business, which had failed.

Petitioner then represented to Penn that he had advanced $20,000 to Mrs. Barber for boat hoisting equipment and was committed to advance an additional $5,000, on the receipt of which

Seastores would make a public offering handled by petitioner's firm. Penn then loaned petitioner $5,000, taking a note in the form of a writing setting forth the following understanding:

" * * * (1) The $5,000 is a loan to me and is repayable in 90 days.

(2) For the favor—I am willing to give you ½ of the shares which I will receive. I estimate *but cannot guarantee* that these shares (500) should have a value of $12,500. However, these shares probably will not be salable until this summer. * * * " (Emphasis in the original.)

In fact petitioner had borrowed from, not advanced monies to, Mrs. Barber; his firm had only talked about Seastores going public, and not very seriously; there was no plan for an offering of stock.

Petitioner, unable to pay the note, received one extension of ninety days, and, after he defaulted on the extended due date, Penn brought his complaint to the Commission. The note was subsequently paid.

■ We first consider the jurisdictional issue, even though the only ground for appeal under which this issue may be thought to be preserved in the Petition for Review is that " * * * [t]he order is not * * * in accordance with the applicable law. * * * " Petitioner's argument is that the transaction at issue lacks the requisite ties with facilities of interstate commerce. But it is stipulated that Penn drew a check in New Hampshire on a New York bank, which had to use interstate means to have it cleared. This is enough. That the jurisdictional hook need not be large to fish for securities law violations is well established. Little v. United States, 331 F.2d 287 (8th Cir.), cert. denied, 379 U.S. 834, 85 S.Ct. 68, 13 L.Ed.2d 42 (1964); United States v. Schaefer, 299 F.2d 625 (7th Cir.), cert. denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962);

---

1. Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j (b) and Rule 10b–5 thereunder, 17 CFR 240.10b–5.

United States v. Cashin, 281 F.2d 669, 673 (2d Cir. 1960).[2]

The two major substantive questions are whether the transaction in this case was a "sale" and whether the subject matter was a "security". Petitioner argues that (1) the Commission erred in construing the definition of "sale" in the Securities Exchange Act to be identical with that in the Securities Act;[3] (2) that, even under the more specific Securities Act, there was no transaction involving Seastores securities "for value"; (3) nor a "purchase of securities or any other thing" to which a gift of Seastores shares could attach; and (4) nor any security "given or delivered with" any purchase.

■■■■ We consider first whether the written commitment to deliver 500 shares of Seastores stock when issued was a "security" under both securities statutes.[4] We hold that it was. In Tcherepnin v. Knight, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967) the Court said:

"As used in both the 1933 and 1934 Acts, security 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits.' S. E. C. v. W. J. Howey Co., 328 U.S. 293, at 299, 60 S.Ct. 1100, 90 L.Ed. 1244 (1946)."

In this case petitioner's written promise to deliver securities in the future was not dissimilar to arrangements specifically covered by the relevant statutes.[5] Indeed, an unconditional promise to deliver securities "probably * * * not * * * salable until this summer" would seem to evidence a more substantial right than an opportunity to subscribe to or purchase stock in the future. In SEC v. Addison, 194 F.Supp. 709, 722 (N.D.Tex. 1961) the court did not hesitate to conclude that oral profit-sharing agreements with lenders and suppliers of services "are investment contracts, and, as such, are securities." And in Seeman v. United States, 90 F.2d 88 (5th Cir. 1937), 96 F.2d 732 (5th Cir.), cert. denied, 305 U.S. 620, 59 S.Ct. 80, 83 L.Ed. 396 (1938), the court was not impressed by the argument that a sale of forged bonds could not be a sale of "securities". Fraudulent representations as to securi-

---

2. Another basis for jurisdiction, not argued extensively, lies in the finding of the Commission that petitioner made several misrepresentations concerning Seastores stock in telephone calls to Penn. Whether the calls were interstate or not does not appear. But, even if intrastate, this might be sufficient. Myzel v. Fields, 386 F.2d 718 (9th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed. 2d 1143 (1968); Lennerth v. Mendenhall, 234 F.Supp. 59, 63 (N.D.Ohio 1964); Nemitz v. Cunny, 221 F.Supp. 571, 575 (N.D.Ill.1963).

3. Section 2(3) of the Securities Act states:

"The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value. * * * Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value. * * *" 15 U.S.C. § 77b(3).

Section 3(a) (14) of the Securities Exchange Act states:
"The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of." 15 U.S.C. § 78c(a) (14).

4. 15 U.S.C. § 77b(1); 15 U.S.C. § 78c (a) (10). The Senate Report on the Act asserts that the definition of security in the 1934 Act was intended to be "substantially the same as [that contained] in the Securities Act of 1933." S.Rep. No. 792, 73d Cong., 2d Sess., 14 (1934).

5. Both statutes, see n. 4 supra, specify in substantially identical language that the following arrangements are encompassed within the definition of "security": a "preorganization certificate or subscription"; an "investment contract"; or a "certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase" "any instrument commonly known as a 'security' ".

ties not yet issued offer fully as much reason for invoking the protection of the securities laws.[6]

■ We also hold that the transaction was a "sale". We are unable to detect any significant difference so far as the transaction in this case is concerned between the two relevant statutes. Both cover contracts for the sale or other disposition of a security. Section 2(3) of the Securities Act, while requiring a transaction "for value", makes clear that a security given with or as a bonus on account of the purchase of "securities or any other thing" is conclusively presumed to have been sold for value. Petitioner's obligation to Penn as expressed in his letter falls within this language, whether we view the commitment as stemming from unalloyed gratitude, or, more reasonably, as part of the quid pro quo to induce Penn to purchase petitioner's ninety day interest-free note. The transaction in this case was not dissimilar to the obtaining of loans and services accompanied by commitments to share in future profits of mining and timber operations which the court in SEC v. Addison, supra, characterized as sales of securities.

Section 3(a) (14) of the Securities Exchange Act contains neither the "for value" limitation of Section 2(3) of the Securities Act nor the conclusive presumption of value provision. We have no reason to believe that Congress intended, one year after the passage of the Securities Act, to dilute the concept of "sale" in the Securities Exchange Act. Cf. Tcherepnin v. Knight, supra. The "otherwise dispose of" language of Section 3(a) (14) and its corollary, "otherwise acquire" in Section 3(a) (13), are, as the court observed in Vine v. Beneficial Fin. Co., 374 F.2d 627, 634 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) "hardly limiting". Thus, the transaction in this case constitutes a sale within Section 3(a) (14) as well as Section 2(3).[7]

■ We have reviewed the record and conclude that the findings of the Commission as to the falsity of petitioner's representations are supported by substantial evidence.

Finally, we come to the appropriateness of the Commission's sanction. The Commission has broad discretion to determine the "public interest" in this area. Marketlines, Inc. v. SEC, 384 F.2d 264, 267 (2d Cir. 1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1033, 19 L.Ed.2d 1136 (1968). Only upon showing a gross abuse of discretion will a sanction be overturned. Tager v. SEC, 344 F.2d 5, 8-9 (2d Cir. 1965). Petitioner's only argument—that the Commission's findings and conclusion have no relation to the original charges—is not based on a balanced reading of the charges as a whole.

The hearing examiner considered and gave weight in his decision to mitigating factors. The sixth month suspension ended on June 19, 1968. The remaining sanction regarding employment in a non-supervisory capacity is a common one and was chosen in lieu of revocation of petitioner's registration in order to give him "another chance—to give him the

---

6. Petitioner argues that the transaction was an exempted one under Section 4(1) of the Securities Act (15 U.S.C. § 77d, 1967 Supp.) in that "[t]he transaction was not one involving an issuer, underwriter or dealer and [is exempt] under Section 4(2) of the Securities Act as the transaction did not involve a public offering." The short answer is that Sections 4(1) and (2) create exemptions only from the registration requirements of Section 5 (15 U.S.C. § 77e) and not from the anti-fraud provisions of Section 17(a) (15 U.S.C. § 77q).

7. The use of the word "include" rather than the word "means" in both Sections 2(3) and 3(a) (14) would seem to warrant a nonrestrictive interpretation. See 1 Loss, Securities Regulation 512 (1961 ed.).

Such a holding would not seem to be strictly necessary since a wilful violation of the Securities Act is a sufficient basis for the imposition of sanctions under Section 15(b) (5) (D) of the Securities Exchange Act, 15 U.S.C. § 78o(b) (5) (D) (1967 Supp.).

means to make amends or to rehabilitate himself." Even this sanction is subject to possible revision or removal should circumstances warrant.

Affirmed.