**Francis R. COLLINS, Plaintiff,**

**v.**

**Michael B. RUKIN**
**and**
**Analytical Systems Corporation,**
**Defendants.**

**Civ. A. No. 71–1903–J.**

United States District Court,
D. Massachusetts.

May 24, 1972.

Barry Ravech, Boston, Mass., for plaintiff.

George J. Basbanes, Lowell, Mass., Peter J. Barack, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS COMPLAINT

JULIAN, District Judge.

This case is before the Court on defendants' motion to dismiss the complaint. Plaintiff, Francis R. Collins, invokes the jurisdiction of this Court under Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. In addition to alleged violations of the federal securities laws, the complaint consists of four state law counts sounding in tort and contract, for which plaintiff invokes the discretionary

pendent jurisdiction of this Court.[1] The plaintiff's version of the facts, which must presently be accepted as true, is as follows:

Plaintiff, an electrical engineer, is a former employee and current stockholder of defendant Analytical Systems Corporation (hereinafter ASC), a domestic corporation with its principal place of business in Burlington, Massachusetts. ASC is engaged in the business of technical consultation and prepares studies for various governmental agencies and private business concerns. Through its subsidiary, Pedagogics, Inc., ASC develops, manufactures, and sells or franchises a product line useful in teaching various aspects of computer science. Defendant Michael B. Rukin is, and has been since incorporation, president, a director, and majority shareholder of ASC.

In 1969 plaintiff was employed by Magnavox Corporation in California. In August and September of that year, defendant Rukin, by mail and telephone, invited plaintiff to leave California and to join ASC in Massachusetts. Rukin offered plaintiff, in addition to a salary, certain so-called fringe benefits, one of which was an opportunity to purchase shares of stock of ASC.

In order to make the stock option attractive and to induce plaintiff to enter the employ of ASC, Rukin allegedly made certain false statements, failed to disclose certain material facts, and employed a scheme to defraud plaintiff in violation of Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 of the General Rules and Regulations of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5, and the common law. The false statements, material non-disclosures, and scheme to defraud consisted of "representations which were calculated to make the plaintiff reasonably be-

lieve that Rukin and ASC had immediate and unimpeded access, in addition to the paid-in capital of ASC of approximately $100,000, to no less than $150,000 which money would be available 'for the asking' and would be used to develop and market a product line for ASC." Complaint, ¶ VI. Plaintiff also alleges that Rukin represented as a fact that ASC was about to "go public"; that the imminent event rendered the value of the stock available under the option agreement, and the agreement itself, substantially greater than its then represented fair market value; and that many brokerage houses were ready to carry the public offering forward.

As a further inducement to join ASC, Rukin allegedly promised plaintiff that, if his performance were satisfactory, Rukin would offer plaintiff, in addition to the stock rights guaranteed by the stock option agreement, a significant increase in his equity position in ASC. Rukin subsequently tendered 25,000 shares of ASC which plaintiff accepted in satisfaction of Rukin's promise to enlarge plaintiff's stock ownership.

As a direct result of these and other misrepresentations by Rukin, plaintiff accepted the offer of employment with ASC, terminated his relationship with Magnavox Corporation in California, and moved to his present residence in Massachusetts on or about December 1, 1969.

The complaint further alleges that, shortly after plaintiff joined ASC, Rukin "prevailed upon the plaintiff to use his position of trust and friendship with his former colleague, Joseph W. Willhide, to convince Willhide to convey the assets of Pedagogics, Inc. to ASC." Complaint, ¶ X. Still believing in the truth of Rukin's representations, plaintiff urged Willhide to join with, and cause Pedagogics to become a part of, ASC. According to plaintiff, Rukin also represented to Willhide that ASC was

[1]. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1966); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). See also Herpich v. Wallace, 430 F.2d 792 (5 Cir. 1970); Errion v. Connell, 236 F.2d 447 (9 Cir. 1956).

solidly capitalized, that access was available to more than sufficient funds with which to properly develop and market a product line, and that the company's purported public offering was imminent. The acquisition was consummated, but, due to insufficient public and private funding, "the development of Willhide's product was severely inhibited and the marketing of it was almost totally interdicted." *Ibid.* Willhide, upon learning of the falsity of Rukin's representations, departed ASC.

Various claims of damage to plaintiff, other shareholders, and the corporation are made, and various forms of legal and equitable relief are requested, none of which is pertinent to the issues raised by defendants' motion to dismiss the complaint. The motion is based upon three separate grounds, viz., that the Court lacks jurisdiction over the subject matter of the complaint, that the complaint fails to state a claim upon which relief can be granted,[2] and that the complaint fails to state with sufficient particularity the circumstances constituting fraud, deception, or other affirmative misrepresentation by defendant Rukin, as required by Fed.R.Civ.P. 9(b). The second ground consists of four alternative contentions, specifically, that the claim is barred by the statute of limitations, laches, waiver, or estoppel. The proffered bases of defendants' motion to dismiss the complaint are considered by the Court *seriatim.*

### Jurisdiction of Subject Matter

Defendants urge that the complaint be dismissed on the ground that the Court lacks jurisdiction of the subject matter because, on its face, the complaint states no violation of Section 17 of the Securities Act of 1933, Section 10 (b) of the Securities Exchange Act of 1934, or Rule 10b–5. Jurisdiction, therefore, would not be conferred upon this Court by Section 22 of the 1933 Act or by Section 27 of the 1934 Act.

The operative provisions of Section 17 of the 1933 Act and of Rule 10b–5, which implements Section 10(b) of the 1934 Act, are, for purposes of determining the sufficiency of the complaint, substantially identical.[3] The facts that must be alleged to state a valid claim under Rule 10b–5 are set forth in the Rule itself:

"§ 240.10b–5 Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interestate [sic] commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

2. Inasmuch as defendants have submitted an affidavit, memorandum of law, and various exhibits in support of their motion to dismiss the complaint, and plaintiff has filed an affidavit, memorandum of law, and various exhibits in opposition thereto, the Court treats that aspect of the motion to dismiss which is based upon failure to state a claim upon which relief can be granted as a motion for summary judgment in accordance with the provisions of Fed.R.Civ.P. 12(b). That rule provides, in pertinent part, that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the plead-

ing to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

3. It is pertinent to note that Section 17 covers offers as well as sales of securities, while Rule 10b–5 uses the phrase "in connection with the purchase or sale of any security."

in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5 (rev. Jan. 1, 1971).

Defendants concede that the complaint successfully alleges use of the jurisdictional means,[4] and that plaintiff charges the defendant Rukin with certain material misrepresentations.[5] Defendants rather contend that the complaint must be dismissed for failing to allege that such material misrepresentations were made "in connection with the purchase or sale of any security."

First, defendants argue that the stock option agreement is not subsumed by the statutory definition of the term "security" set forth in Section 3(a) (10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a) (10). Defendants concede that, on its face, the definition appears to embrace stock options granted employees by including any "warrant or right to subscribe to or purchase" any "note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement . . . or in general, any instrument commonly known as a 'security.'"[6] Defendants further acknowledge that stock options have been considered by other courts to fall within the statutory definition. *See, e. g.,* Globus, Inc. v. Jaroff, 271 F.Supp. 378, 380 (S.D.N.Y. 1967); S. E. C. v. Texas Gulf Sulphur Co., 258 F.Supp. 262, 290 (S.D.N.Y. 1966), aff'd 401 F.2d 833 (2 Cir. 1968).

The point underscored by defendants, however, is that the definitions in the 1933 and 1934 Acts are statutorily qualified by the phrase "unless the context otherwise requires." The stock option agreement here in issue is personal, non-transferable, and hence non-negotiable. With quotations culled from the leading commentary of Professor Loss,[7] defendants urge a flexible taxonomic approach, one which recognizes that the context has, at times, otherwise required. As an example, defendants note that the S.E.C. has not required registration of non-transferable options or warrants, saying that "ordinarily non-transferable warrants are in the nature of private contracts and their registration is not required." Securities Act Release No. 3210 (April 9, 1947).[8]

Similarly, argue defendants, the fraud provisions of the securities laws should not apply to a non-transferable stock option which is "incident to and part and parcel of an employment contract for personal services. It arises from the private negotiations for employment between Collins and ASC and Rukin. Rule 10b–5 is designed to protect investors; Collins here, however, is very much more an employee than an investor with respect to the option agreement. Certainly, Section 10 of the 1934 Act and Rule 10b–5 promulgated by the Commission thereunder were not intended to create a federal right for alleged misrepre-

4. Complaint, ¶ V.

5. *Id.,* ¶ VI.

6. The pertinent part of the statutory definition of "security" in the Securities Act of 1933, 15 U.S.C. § 77b(1), is identically phrased. See Lawrence v. S.E.C., 398 F.2d 276, 279 n. 4 (1 Cir. 1968).

7. 1 Loss, Securities Regulation 467 (2d ed. 1961); 4 Loss, at 2494.

8. But see In the Matter of Middle South Utilities, Inc., Securities Act Release No. 14367 (1961), in which the S.E.C. held that stock options were none the less "securities" under the Holding Company Act, 15 U.S.C. § 79 et seq., by virtue of their being non-transferable: "Declarant is entitled to no comfort from the fact that under certain circumstances regis-

tration under the Securities Act of 1933 may not be required for non-transferable options or warrants. (See Securities Act Release No. 3210 (April 9, 1947), referred to in Loss, Securities Regulation (1951) 305.) This does not mean that the warrants or options are not securities; registration may not be required because no sale or offering for value is involved, or there is no public offering involved, or for other reasons not connected with the definition of a security."

Nevertheless, Professor Loss believes that it is still arguable that a non-transferable option which is incident to a contract for personal services is not a "security" for purposes of the fraud provisions of the 1933 Act. 4 Loss, Securities Regulation 2494 (2d ed. 1961).

sentations in private employment negotiations." Defendants' Memorandum in Support of Motion to Dismiss Complaint, at 3. Defendants attempt to distinguish the cases of Globus, Inc. v. Jaroff, *supra,* and S. E. C. v. Texas Gulf Sulphur Co., *supra,* by stressing the contexual difference of the instant case, i. e., the fact that the dispute here centers upon alleged misrepresentations made in the course of private employment negotiations, not a scheme to defraud public investors by grantees of stock options who withheld material information from the granting authority.[9]

■■ Whether such a difference in context constitutes a difference in law is doubtful. That the private nature of the transaction affords no immunity from the anti-fraud provisions of the securities laws is well established. *See, e. g.,* Schine v. Schine, 250 F.Supp. 822 (S.D. N.Y.1966) and cases cited; 3 Loss, Securities Regulation 1467 (2d ed. 1961). Furthermore, the term "security" should be broadly construed to effectuate the remedial purposes of federal securities legislation. In Tcherepnin v. Knight, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967), the Supreme Court, in deciding that withdrawable capital shares in a state-chartered savings and loan association fall within the statutory definition of "security," stated that

"[e]ven a casual reading of § 3(a) (10) of the 1934 Act reveals that Con-

gress did not intend to adopt a narrow or restrictive concept of security in defining that term. As this Court observed with respect to the definition of security in § 2(1) of the Securities Act of 1933, 'the reach of the Act does not stop with the obvious and commonplace.' S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943). As used in both the 1933 and 1934 Acts, security 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.' S. E. C. v. W. J. Howey Co., [328 U.S. 293] at 299, 66 S.Ct. 1100, 90 L.Ed. 1244." [10]

■ Just as "fraudulent representations as to securities not yet issued offer fully as much reason for invoking the protection of the securities laws" as fraudulent representations as to issued securities, Lawrence v. S. E. C., 398 F.2d 276, 279–280 (1 Cir. 1968), fraudulent representations as to securities not yet purchased by the recipient of a stock option are subject to the same federal prohibition as fraudulent representations as to securities whose sale is actually consummated. No compelling reason has been suggested to this Court why one who, in the interest of promoting his company and employing the most talent-

---

9. Defendants also cite Kaminsky v. Abrams, 281 F.Supp. 501, 504 (S.D.N.Y. 1968) for the proposition that "the absence of any monetary investment" in the option contract has led to the finding that no "security" was present. Defendants' reading of that decision to the contrary notwithstanding, the court in *Kaminsky* declined to hold that a corporate obligation to pay a death benefit to the family of a deceased officer was not a security because of the lack of an economic investment, even though services, normally sufficient to avoid a charge of waste of corporate assets (see 1 Loss 507), were rendered by the employee in consideration of the agreement. Rather, the court expressed doubt that the obligation was a security under either the

Securities Act or the Securities Exchange Act "because of the absence of any monetary investment in return for the death benefit agreement." The court held that, even if the agreement is a security, the complaint must be dismissed for failure to allege that the agreement was unfair to the corporation or that the corporation had been damaged by its non-disclosure.

10. See also Lawrence v. S.E.C., 398 F.2d 276 (1 Cir. 1968). Such an expansive concept of security comports with the broad construction placed upon the anti-fraud provisions of the Securities laws. See S.E.C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed. 2d 668 (1969).

ed people in a particular field, engages in fraudulent practices in connection with the offer or sale of securities should enjoy any greater freedom from the operation of the federal securities laws than one who perpetrates a fraud without promotional or employment motive.[11] Therefore, the Court declines to hold that the instant context, as a matter of law, requires that the explicit inclusion of stock options in the definitional sections of the 1933 and 1934 Acts be disregarded for the purpose of determining the question of subject matter jurisdiction.

Nor is the Court persuaded that it lacks jurisdiction over the subject matter of this complaint because the stock option agreement *qua* security was not the object of any "sale" by defendants to plaintiff, as that term is defined in Section 2(3) of the Securities Act of 1933, 15 U.S.C. § 77b(3), and in Section 3(a) (14) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a) (14). The former section defines the term "sale" as including "every contract of sale or disposition of a security or interest in a security, for value." The latter section states that the term "sale" includes "any contract to sell or otherwise dispose of." [12]

Indicative of the broad reach of such a concept of "sale" is the treatment of defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter, and for failure to state a claim upon which relief can be granted,

in Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369 (D.Del.1965). In *Voege*, a minority shareholder brought a derivative action in which she alleged various violations of Section 10 (b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Specifically, plaintiff alleged a fraudulent course of conduct by which defendants induced a merger between the company in which she held shares and another, the result of which was a required surrender of her stock at a price grossly below its real value. Defendants argued that no rights could accrue to the plaintiff under Rule 10b–5 inasmuch as she never "sold" her stock pursuant to the tender offer of a fixed price per share, but rather demanded an appraisal under the Delaware Corporation Law. In denying defendants' motion to dismiss the complaint, the court noted the breadth of the statutory definition of sale, acknowledged the contractual nature of the charter of a corporation between the corporation and its shareholders, and between the shareholders *inter sese*, and held the merger agreement by which shareholders would either surrender their shares for the amount specified in the agreement or accept their appraised value to constitute a contract to sell or otherwise dispose of securities under the 1934 Act. The Court stated:

"The frauds allegedly perpetrated upon plaintiff were, in a very real sense, related to a vital part of the con-

---

11. See 1 Loss, Securities Regulation 467, wherein Professor Loss describes the "dual personality" of warrants and rights to purchase stock, being themselves "securities" and representing offers to sell other securities.

See also Bromberg, Securities Law 397: "Even if an employee stock option is not itself a security, it may have sufficient 'connection' with the underlying security for its grant or transfer to fall within 10b–5."

12. As to the significance of the difference in definitional wording, the United States Court of Appeals for the First Circuit has stated: "We have no reason to believe that Congress intended, one year

after the passage of the Securities Act, to dilute the concept of 'sale' in the Securities Exchange Act." Lawrence v. S.E.C., *supra*, at 280. The court further stated that the "use of the word 'include' rather than the word 'means' in both Sections 2(3) and 3(a) (14) would seem to warrant a nonrestrictive interpretation. *Id.*, at 280 n. 7. See also S.E.C. v. National Securities, Inc., 393 U.S. 453, 467 n. 8, 89 S.Ct. 564, 21 L.Ed.2d 668.

Correspondingly, Section 3(a) (13) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a) (13), provides that "[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."

tract (the fixation of the purchase price) under which plaintiff had agreed to sell. They were committed 'in connection with the purchase [and] sale' of a security within the meaning of Rule 10b–5. Any other view of the transaction would defeat the purpose of Rule 10b–5, which, as stated in Hooper v. Mountain States Securities Corp., 282 F.2d 195, 202 (5 Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961) is 'to keep the channels of interstate commerce, the mail, and national security exchanges pure from fraudulent schemes, tricks, devices, and all forms of manipulation.' " (Footnote omitted.) 241 F.Supp. at 374.

Just as *Voege* agreed that, in the event of a merger, the surviving corporation should have an option to purchase her shares at a price to be determined *in futuro*, the present complainant agreed, in accepting employment with ASC, that he should have an option to purchase—and the corporation agree to sell—a given number of shares at a price, presently fixed, at some future time *within the stipulated option period*. The executory nature of the stock option agreement renders it no less a contract for the sale of securities than did the executory nature of the merger agreement in *Voege*. The broad design of the federal securities laws should not be frustrated by restrictive application of the purchase-sale requirement. See S. E. C. v. National Securities, Inc., *supra*, 393 U.S. at 467–468, 89 S.Ct. 564; Kahan v. Rosenstiel, 424 F.2d 161 (3 Cir. 1970); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2 Cir. 1969).

Even conceding *arguendo* that the stock option agreement is a security and that it is also a contract to sell or oth-

erwise dispose of securities, defendants contend that the Court lacks subject matter jurisdiction in the absence of cash consideration flowing from Collins to ASC. Plaintiff admits that he received the stock option without the requirement of immediate cash payment. His contribution was to take the form of services and any financial contribution to the corporation on his part would be made, if at all, when he exercised the option to purchase its shares. According to defendants, the absence of cash consideration negatives the jurisdictionally requisite sale, i. e., disposition for value. Defendants characterize plaintiff as a grantee, rather than a purchaser, of the security.

Whether plaintiff's acceptance of employment with ASC and his subsequent performance of services as an electrical engineer and executive officer qualifies as value, so as to render the transaction a disposition of a security for value, is a question of law as to which the Court lacks precedential authority directly in point. Unable to summon pertinent case law for the requirement of monetary investment,[13] defendants seek to sustain an analogy between the instant stock option agreement and "bonus" pension or profit-sharing plans for employees, or "bonus" distributions of corporate stock, for which no cash consideration is required. If the allegations of the complaint are true, however, the stock option accepted by plaintiff could not reasonably be characterized as a bonus, granted gratuitously by an employer to an employee. When defendant Rukin offered the stock option to plaintiff, no employer-employee relationship yet existed. According to the complaint, the option was a *quid pro quo* offered to induce plaintiff to enter into the employ of ASC. Defendants' analogical argument is not persuasive.

---

13. Defendants do cite Tcherepnin v. Knight, *supra*, for the vague proposition that "the emphasis should be on economic reality"; in so doing, they ignore the context of the statement, culled as it is from the passage earlier reproduced in this opinion.

Defendants also rely upon Kaminsky v. Abrams, *supra*, but their reading of the holding of that case is erroneous, as explained in note 9, *supra*.

As to whether plaintiff's performance of services satisfies the "value" requirement of a sale of securities, the Court finds two decisions instructive: S. E. C. v. Addison, 194 F.Supp. 709, 722 (N.D.Tex.1961), and Lawrence v. S. E. C., *supra*. In holding that oral profit-sharing agreements between defendants and lenders of money and suppliers of services "are investment contracts, and, as such, are securities," the Addison court concluded that "[t]he giving of the personal loan notes, evidences of indebtedness, certificates of interest or participation in profit-sharing agreements and investment contracts whether as a gift out of gratitude for, or in consideration or exchange of, the personal loans of money *or services of labor rendered,* constitute [sic] sales of securities because either way it amounts to a disposition *or giving of a security for value.*" (Emphasis supplied.) And, in affirming the conviction of a broker for wilfully violating the anti-fraud provisions of the federal securities laws, the United States Court of Appeals for the First Circuit found the transaction in *Lawrence* "not dissimilar to the obtaining of loans and services accompanied by commitments to share in future profits of mining and timber operations which the court in S. E. C. v. Addison, *supra,* characterized as sales of securities." [14] The court held that the transaction was a "sale" under Section 2(3) of the Securities Act, 15 U.S.C. § 77b(3), and Section 3(a) (14), 15 U.S.C. § 78c(a) (14). [15] in so holding, the court noted that the wording of each definitional section warrants nonrestrictive interpretation of the concept of "sale." [16]

Defendants' contention that the stock option was not given "for value," however anomalous in the context of employment contract negotiations, also runs counter to the view of a leading commentator who states that if stock is specifically held out as an inducement to enter into employment contracts, the issuance of such stock as a "bonus" would involve a sale. [17]

Finally, defendants contend that, even assuming that there has been a sale of a security, the complaint must be dismissed because the alleged misrepresentations were not made "in connection with" the sale of this security. Simply stated, the argument is that the "direct object" of Rukin's alleged misrepresentations was plaintiff's employment by ASC; sale of the security was "quite ancillary to the object of employing Collins." Defendants' Memorandum in Support of Motion to Dismiss Complaint, at 8.

■■ Defendants' argument is without merit. The phrase "in connection with the purchase or sale of any security" must be broadly and flexibly construed "so that the broad design of security fraud provisions is not frustrated by the use of novel or atypical transactions." Herpich v. Wallace, 430 F.2d 792, 807 (5 Cir. 1970); see also Tcherepnin v. Knight, *supra*; S. E. C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). The "in connection with" requirement is satisfied whenever a device is employed "of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities." S. E. C. v. Texas Gulf Sulphur Co., *supra,* 401 F.2d at 860. The dominant motive of Rukin— whether he primarily sought to induce plaintiff's employment or to induce the sale of corporate securities which underlay the stock option, itself a security —is not only an unproved question of

---

14. 398 F.2d at 280.

15. In *Lawrence*, the broker was found to have made representations in connection with his written commitment to deliver 500 shares of stock "when issued" to one who consequently loaned him $5,-000.

16. 398 F.2d at 280, n. 7. See note 12, *supra*.

17. 1 Loss, Securities Regulation 516, n. 177.

fact, but is wholly irrelevant if the effect of his misrepresentations was to cause plaintiff, reasonably relying thereon, to purchase a security of ASC. See Heit v. Weitzen, 402 F.2d 909, 913 (2 Cir. 1968).

For the foregoing reasons, defendants' motion to dismiss for lack of jurisdiction over the subject matter of the complaint is denied.

### Waiver, Laches, and Estoppel

■ Defendants variously urge dismissal on the asserted grounds of waiver, laches, and estoppel. Each affirmative defense in turn depends upon plaintiff's alleged "loss of innocence." See Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213–214 (9 Cir. 1962). The central questions of whether—and, if so, when—plaintiff became aware, or should have become aware, of the rights which he presently asserts, and what legal construction should be placed upon his subsequent course of conduct, are unanswered by the record in its present state. Resolution of each defense must await the trial of facts which are neither admitted nor clearly established by the pleadings to date. Inferences as to plaintiff's mental state, actual or implied, drawn from his participation in the conduct of the affairs of ASC prior to commencement of this action require proof, not mere assertion, to sustain a judgment for the defendants.[18]

Accordingly, defendants' motion to dismiss for failure to state a claim upon which relief can be granted because, as a matter of law, plaintiff's claim is barred by waiver, laches, and/or estoppel, treated as a motion for summary judgment, is denied.

### Statute of Limitations

Defendants move to dismiss the complaint on the ground that the complaint fails to state a claim upon which relief can be granted because, as a matter of law, plaintiff's claim is barred by the applicable statute of limitations. Defendants contend that Section 13 of the Securities Act of 1933 is the applicable statute of limitations for violations of Rule 10b–5. Section 13 provides as follows: "No action shall be maintained to enforce any liability created under section 11 or section 12(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(1), unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or 12 (1) more than three years after the security was bona fide offered to the public or under section 12(2) more than three years after the sale." According to the defendants, plaintiff had actual or constructive knowledge of the alleged misrepresentations in the employment negotiations in July of 1970. This action was commenced on September 3, 1971, after the one-year period within which to prosecute plaintiff's claim had expired.

---

18. The course of conduct which, defendants contend, evinces plaintiff's awareness of the true state of the affairs of ASC consists of 1) Collins' continued employment as vice president of ASC and as president and director of Pedagogics, a wholly owned subsidiary of ASC; 2) his acceptance of warrants for ASC shares as consideration for his participation in the acquisition of Pedagogics; 3) his exercise of those warrants in July of 1970; and 4) his exercise of options for ASC shares pursuant to the stock option agreement in November of 1970. According to defendants, plaintiff so acted "even though aware of any prior misrepresentations and his correlative rights." Defendants' Memorandum in Support of Motion to Dismiss Complaint, at 14. Whether plaintiff acted with actual or implied knowledge of prior misrepresentations and correlative rights, thus giving rise to affirmative defenses of waiver, estoppel, or laches, is a genuine issue of material fact, left unresolved by the complaint, motion to dismiss, and accompanying affidavits and exhibits.

■ However, defendants' contention that Section 13 of the Securities Act of 1933 is the applicable statute of limitations in private actions brought under Section 17 of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 is without support in decisional law. Defendants concede that no federal statute of limitations is directly applicable to such actions, and that "the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation." Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L. Ed. 743 (1946). See also International Union, United Automobile, etc., Workers of America, U. A. W.–A. F. L.–C. I. O. v. Hoosier Cardinal Corp., 383 U.S. 696, 703–704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Klein v. Spear, Leeds & Kellogg, 306 F.Supp. 743 (S.D.N.Y.1969); Janigan v. Taylor, 344 F.2d 781 (1 Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). Were such a rule to be applied in the present case, the applicable limitations period would be two years, whether by virtue of the Massachusetts Blue Sky Law, Mass.G.L. c. 110A, § 18, or the statute of limitations for general tort actions, Mass. G.L. c. 260, § 2A. See Dyer v. Eastern Trust and Banking Co., 336 F.Supp. 890, 906 n. 22 (D.Me.1971). It is defendants' contention, however, that Section 13 of the 1933 Act provides a "better analogy" to private actions in securities cases "than a more or less randomly selected state statute for the judicial creation of a limitation period." 6 Loss, Securities Regulation 3900.

However compelling the analogical argument for application of Section 13 to the instant action, defendants are unable to refer this Court to a single decision supporting their view. Not only would it be harsh indeed to dismiss plaintiff's action in the face of established precedential authority sustaining application of the local statute of limitations, but extension of Section 13 beyond its express provisions by judicial interpretation "would be an affront to the legislative process." Premier Industries Inc. v. Delaware Valley Financial Corp., 185 F.Supp. 694, 696 (E.D.Pa.1960).

Accordingly, defendants' motion to dismiss the complaint as barred by the applicable statute of limitations is denied.

### Particularity of Complaint

■ In determining whether the complaint should be dismissed for failure to state with sufficient particularity the circumstances constituting fraud, as required by Fed.R.Civ.P. 9(b), the Court is rightfully mindful of the mandate of Fed.R.Civ.P. 8, viz., that a pleading set forth its claim for relief in a "short and plain statement," that averments be "simple, concise and direct," and that "no technical forms of pleading are required." That Rules 8 and 9(b) should be read in conjunction is well established. See 5 Wright & Miller, Federal Practice and Procedure: Civil § 1298, and cases cited. The Federal Rules of Civil Procedure do not require that a claimant set out in detail the facts upon which he bases his claim. Garcia v. Bernabe, 289 F.2d 690 (1 Cir. 1961). Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80 (1957).

■ Turning to the sufficiency of the allegations here in issue, the Court does not find the complaint so vague or ambiguous that defendants cannot reasonably be required to frame a responsive pleading thereto.[19] Should defend-

---

19. Count I of the plaintiff's first amended complaint, alleging violations of the federal securities laws, reads as follows:

"*Jurisdiction.* Jurisdiction vests because of allegations of wrongdoing under Rule X–10B–5 of the General Rules and

ants deem greater particularity necessary to the preparation of an adequate defense, recourse to various discovery procedures may be had.

Defendants' motion to dismiss the complaint for noncompliance with Rule 9(b) is, therefore, denied.

Regulations of the Securities and Exchange Commission, pursuant to and under the authority granted in the Securities Exchange Act of 1934, 15 U.S.C. § 78j, 48 Stat. 891. Jurisdiction is also conferred under the Securities Act of 1933, 15 U.S.C. § 77v, 48 Stat. 86. As to the allegations of breach of contract and injury to the corporation, the plaintiff says that those claims arise out of a common nucleus of operative facts

and the Court has pendant [sic] jurisdiction."

Compare Official Form 13, an illustrative claim of fraud expressly declared to be "sufficient under the rules" and "intended to indicate the simplicity and brevity of statement which the rules contemplate" by Fed.R.Civ.P. 84.

See Ellis v. Carter, 291 F.2d 270, 275 n. 5 (9 Cir. 1961).