Earl T. DEMOE and Fukimo O. Demoe, Plaintiffs,

v.

DEAN WITTER & COMPANY, Herbert Woller and Joseph W. Bouschor, Defendants.

Civ. No. A 76–246.

United States District Court, D. Alaska.

Sept. 10, 1979.

Paul R. DeStefano, of Ely, Guess & Rudd, Anchorage, Alaska, for plaintiffs.

Ann C. Liburd, of Burr, Pease & Kurtz, Inc., Anchorage, Alaska, for defendants.

### MEMORANDUM OF OPINION

FITZGERALD, District Judge.

Dean Witter & Company, a brokerage firm licensed to do business in Alaska, and the personal defendants have moved to dismiss the first claim stated in the complaint the grounds that no private cause of action

exists under Section 17(a) of the Securities Act of 1933.[1] Since Section 17(a) provides no express civil remedy, the question now to be resolved is whether a private right of action under Section 17(a) is properly implied.[2]

Earl and Fukimo Demoe, residents of Japan, opened an investment account with Dean Witter & Company in March 1977. The Demoes claim that defendants purchased and sold securities and commodities in excessive amounts, given the character of the account, and that many of the transactions were made without their knowledge or authorization. In short, plaintiffs contend that defendants engaged in "churning" the account to profit themselves and the brokerage firm through earning excessive commissions.[3]

The complaint makes seven additional claims based primarily on the above allegations, including violations of Section 10(b) of the Securities Exchange Act of 1934,[4] Securities Exchange Commission Rule 10b–5,[5] the Commodity Exchange Act of 1936,[6] Section 10 of the Alaska Securities Act of 1959,[7] and breach of a fiduciary duty owed to plaintiffs under the common law of Alaska and under the rules of the National Association of Securities Dealers.

The question of whether Section 17(a) gives rise to a private cause of action for damages has not yet been ruled upon by the United States Supreme Court,[8] and the circuit courts of appeals which have considered the issue have reached conflicting conclusions.[9]

Although the Ninth Circuit Court of Appeals has on several occasions noted that plaintiffs have relied on Section 17(a) as a basis for relief, the question of whether an implied private right of action exists under Section 17(a) has not been squarely decided in this circuit.[10] Two district courts within the circuit have held that a private civil action for damages lies for violation of Section 17(a), treating Section 17(a) interchangeably with Section 10(b) of the 1934 Act.[11] A third has held that a private right of action exists under Section 17(a)(1) and (a)(3) where fraud is alleged and proved,

1. 15 U.S.C. § 77q(a).

2. Jurisdiction over actions brought under the 1933 Act is expressly conferred by Section 22 of the Act, 15 U.S.C. § 77v.

3. It has been held that a broker who "churns" a customer's account violates Section 17(a) and other anti-fraud provisions of federal securities acts even though the customer and broker are not in the classic buyer-seller relationship. *See Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417 (N.D.Cal.1968), *modif. on other grounds*, 430 F.2d 1202 (9th Cir. 1970); *see generally* Comment, "Private Actions for the Broker's 'Churning' of a Securities Account," 40 Mo.L.Rev. 281 (Spring 1975).

4. 15 U.S.C. Section 78j(b). Jurisdiction over actions brought under the 1934 Act is expressly conferred by Section 27 of the Act, 15 U.S.C. § 78aa.

5. 17 C.F.R. Section 240.10b–5.

6. 7 U.S.C. Section 1 *et seq.*

7. A.S. 45.55.010.

8. *See Daniel v. International Brotherhood of Teamsters, Chauf., Etc.*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

9. *E. g. Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223 (7th Cir. 1977), reversed on other grounds, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (private right of action exists under 17(a) for fraudulent misrepresentation); *Newman v. Prior*, 518 F.2d 97, 99 (4th Cir. 1975) (Section 17(a) supports a private damage claim for the fraudulent sale of securities); *Greater Iowa Corporation v. McLendon*, 378 F.2d 783, 788–790 (8th Cir. 1967) (private action must be brought under Section 12(2) and not under Section 17(a).

10. *Bosse v. Crowell, Collier and MacMillan*, 565 F.2d 602, 610 n. 12 (9th Cir. 1977); *White v. Abrams*, 495 F.2d 724, 727 n. 2 (9th Cir. 1974); *Douglass v. Glenn E. Hinton Investments, Inc.*, 440 F.2d 912 (9th Cir. 1971); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964).

11. *Malik v. Universal Resources Corp.*, 425 F.Supp. 350, 363 (S.D.Cal.1976); *Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417 (N.Cal. 1968), modified on other grounds 430 F.2d 1202 (9th Cir. 1970); *see also Danford v. Schwabacher*, 342 F.Supp. 65 (N.D.Cal.1972); *Greitzer v. United States National Bank*, 326 F.Supp. 762 (S.D.Cal.1971).

but that a private right of action under 17(a)(2) for negligent misrepresentation is subject to the limitations found in Section 12 of the 1933 Act.[12] Subsequent to these decisions, the Supreme Court has offered additional guidance regarding the proper test to be applied in determining whether a private cause of action is implied in a statute not expressly providing one.

■ It has become well-established that the question of the existence of a statutory cause of action is one of statutory construction. *Touche Ross & Co. v. Redington, Trustee,* —— U.S. ——, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). As recent Supreme Court decisions demonstrate, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago,* —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Rather, the following factors, outlined in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), are to be examined to determine whether Congress intended to create a private right of action:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [emphasis is in original, citations omitted]

■ Upon review of these factors, and recent decisions applying them, I conclude that there is a private right of action for damages implicit in Section 17(a)(3) of the 1933 Act but that no such right exists under Sections 17(a)(1) or 17(a)(2).

■ Analysis must begin with the language of the statute itself. Section 17(a) in relevant part provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Although Section 17(a) does not by its terms purport to create a private cause of action, it clearly prohibits fraudulent or deceitful conduct[13] in the "offer or sale of any securities."

---

12. *In re Gap Stores Securities Litigation,* 457 F.Supp. 1135, 1142 (N.D.Cal.1978), citing *Dorfman v. First Boston Corp.,* 336 F.Supp. 1089 (E.D.Pa.1972); *see also In re Equity Funding Corp. of Am. Sec. Litigation,* 416 F.Supp. 161, 185 n. 16 (C.D.Cal.1976).

13. On this basis the statute may be distinguished from the provision construed in *Touche Ross & Co. v. Redington, Trustee, supra.* In *Touche Ross,* the Supreme Court, per Justice Rehnquist, construed the terms of Section 17(a) of the 1934 Act, which requires bro-

ker-dealers to keep such records and file such reports as the SEC may prescribe. The court concluded that the section's intent, evident from its face, is to provide the SEC and others with early warning to enable them to take appropriate action to protect investors before a broker-dealer's financial collapse, and not to confer any remedy in the event the regulating authorities are unsuccessful in achieving their objectives. The Court distinguished cases finding implied private remedies that Section 17(a) of the 1934 Act "neither confers rights on pri-

■ The initial question under *Cort*, however, is whether the statute was enacted for the benefit of a special class of which plaintiff is a member. By its terms, Section 17(a)(3) makes it unlawful for any person in the offer or sale of securities to engage in any transaction, practice, or course of business which operates as a fraud or deceit "upon the purchaser." In contrast to subsection 17(a)(3), neither subsection 17(a)(1) or 17(a)(2) contain reference to any special protected class of investors or dealers but rather the public at large. And in *United States v. Naftalin*, —— U.S. ——, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979), the Supreme Court has held that the phrase "upon the purchaser" in subsection 17(a)(3) should not be read into all three subsections because "each subsection proscribes a distinct category of misconduct." This reading is consistent with the legislative history of the Act which indicates, as discussed below, that 1933 Act was enacted to achieve a high standard of business ethics in the security industry, as well as to provide investor protection. Accordingly, plaintiff as a purchaser of securities is a member of the special class to be benefitted only under Section 17(a)(3).

■ The second condition of the *Cort* analysis requires consideration of legislative history to determine "legislative intent, explicit or implicit, either to create such a

remedy or deny one." Congress enacted the Securities Act of 1933 as "part of the aftermath of the market crash in 1929" with the "contemplation that regulation of the securities market might help set the economy on the road to recovery." *United States v. Naftalin, supra.* The 1933 Act was designed to "provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). Although the 1933 Act was primarily concerned with the regulation of new offerings, the antifraud prohibition of Section 17(a) was meant to be a major departure from that limitation. Unlike much of the rest of the Act, it was "intended to cover any fraudulent scheme in the offer or sale of securities, whether in the course of an initial distribution or in the course of ordinary market trading." *United States v. Naftalin, supra.*

It has been suggested, however, that to imply a private cause of action under Section 17(a) would circumvent the limitations placed on the express private rights [14] created by Sections 11 and 12 [15] of the Act.

vate parties nor proscribes any conduct as unlawful."

14. 3 Loss, Securities Regulation 1785 (1961); . . . [The 1933 act] has but two important substantive provisions, §§ 5 and 17(a). Noncompliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But the very restrictions contained in those sections and the differences between them—for example, the fact that § 11 but not § 12 imposes liability on certain persons connected with the issuer without regard to their participation in the offering and the fact that § 12(2) does not go so far in relation to § 17(a) as § 12(1) goes in relation to § 5—make it seem

the less justifiable to permit plaintiffs to circumvent the limitations of § 12 by resort to § 17(a). Particularly is this so in view of the fact that § 11, together with the statute of limitations in § 13 was actually tightened in the 1934 amendments to the Securities Act. In addition, it has been pointed out that unlike Rule 10b–5 claims, Section 17(a) claims may be brought in state courts and if so brought are not removable to federal courts under Section 22 of the 1933 Act, 15 U.S.C. § 77v(a). Horton, "Section 17(a) of the 1933 Securities Act—The Wrong Place for a Private Right", 68 N.W.U.L.Rev. 44, 53 (1973).

15. Section 12, 15 U.S.C. § 77*l* provides as follows:

Any person who—
(1) offers or sells a security in violation of section 77e of this title, or
(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of

The conduct prohibited by Section 17(a)(2) is almost identical to that prohibited by Section 12(2). As under Section 17(a)(2), scienter need not be proved to establish a *prima facie* case under Section 12(2).[16] Section 12(2), however, expressly provides a civil remedy for "purchasers." Moreover, Section 12(2) is subject to the statute of limitations provided for by Section 13.[17] It therefore appears from the statutory scheme that Section 12(2) was intended to provide the only remedy in the 1933 Act for negligent misrepresentations in an offer or sale of securities. To imply a private right of action for damages under Section 17(a)(2) would be to undermine the statutory scheme embodied in Section 12(2) of the 1933 Act. Sections 17(a)(1) and 17(a)(3) require a showing of fraud, rather than negligence, and so do not impinge on the limitations of Sections 11 and 12.

It has also been suggested that the whole of Section 17(a) was never intended to supplement the actions for damages provided by Sections 11 and 12:

[T]here is unanimity among the commentators, including some who were in a peculiarly good position to know, that § 17(a)(2) of the 1933 Act—indeed the whole of § 17—was intended only to afford a basis for injunctive relief and, on a proper showing, for criminal liability, and was never believed to supplement the actions for damages provided by §§ 11 and 12. *See* Landis, Liability Sections of Securities Act, 18 Am.Acct. 330, 331 (1933); Douglas and Bates, Federal Securities Act of 1933, 43 Yale L.J. 171, 181–82 (1933); 3 Loss Securities Regulation 1785–86 (1961). When the House Committee Report listed the sections that "define the civil liabilities imposed by the Act" it pointed only to §§ 11 and 12 and stated that "[t]o impose a greater responsibility [than that provided by §§ 11 and 12] * * * would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public." H.Rep.No.85, 73d Cong., 1st Sess. 9–10 (1933). Once it had been established, however, that an aggrieved buyer has a private action under Section 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under § 17– with the important proviso that fraud, as distinct from mere negligence, must be alleged. . . .

*SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2nd Cir. 1968) (concurring opinion of Judge Friendly), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1968).

Despite the views of commentators regarding the legislative history of Section 17(a), recognition of a private right of action under Section 10(b) of the 1934 Act, as Judge Friendly observed, argues against de-

---

subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

16. Section 12(2) creates potential liability for a seller of securities in favor of the purchaser for misleading statements or omissions in connection with the transaction. The seller is exculpated if he proves that he did not know, or, in the exercise of reasonable care, could not have known, of the untruth or omission.

17. Unlike actions brought under Section 12(1) or 11, the statute of limitations applicable to Section 12(2) restricts the bringing of the action to a period of time from one year after discovery, or in no event, more than three years after the *sale* of the security, rather than three years after the security was bonafide offered to the public. 15 U.S.C. § 77m.

nying such a right under the parallel provision of the 1933 Act.[18]

■ The 1933 and 1934 Acts constitute interrelated components of the federal regulatory scheme governing transactions in securities, and "the interdependence of the various sections of the securities laws is certainly a relevant factor in any interpretation of the language Congress has chosen." *Ernst & Ernst v. Hochfelder, supra* 425 U.S. at 206, 96 S.Ct. at 1387 quoting *SEC v. National Securities, Inc.*, 393 U.S. 453, 466, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In view of the close relation between the two acts, it has been noted that Congress would not have "nullified" in Section 10(b) of the 1934 Act the detailed procedural restrictions on Sections 11 and 12 of the 1933 Act.[19] Applying this rationale, the Supreme Court determined that "scienter" must therefore be alleged in Rule 10b–5 actions.[20] Since the Supreme Court has recognized a private right of action under Section 10(b) and Rule 10b–5,[21] it follows conversely that purchasers able to rely on Rule 10b–5 should be entitled to rely on Section 17(a)(3).[22] Thus, the third *Cort* factor,

whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy, supports a private cause of action under Section 17(a)(3).

■ Finally, a private cause of action under Section 17(a)(3) would clearly assist enforcement of SEC rules under the federal scheme directed at discouraging fraudulent practices in the offer or sale of securities, and therefore, the cause of action is not one traditionally relegated to state law. The fourth *Cort* factor thus supports implication of a private right of action.

After examining the four *Cort* factors, I conclude that a private cause of action may be implied under Section 17(a)(3) of the 1933 Act. Although there is no express indication that Congress contemplated such a remedy, once a private cause of action was recognized under Rule 10b–5, a reading of the two acts together leads to implication of a private cause of action for purchasers alleging fraud under Section 17(a)(3). Accordingly, defendants' motion to dismiss Count I of the complaint is hereby DENIED.

**18.** A private right of action under Section 17(a) of the 1933 Act was first recognized thirty years ago in *Osborne v. Mallory*, 86 F.Supp. 869 (S.D.N.Y.1949). Two years later, the Second Circuit Court of Appeals indicated its approval of a Section 17(a) private cause of action as dictum in the oft-cited *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783, 787 n. 2 (2nd Cir. 1951).

**19.** *Ernst & Ernst v. Hochfelder*, 425 U.S. at 210, 96 S.Ct. 1375 (1976).

**20.** 3 Loss, Securities Regulation 1787 (1961); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. at 730, 95 S.Ct. 1917.

**21.** *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *see also Ernst & Ernst v. Hochfelder, supra; Blue Chip Stamps v. Manor Drug Stores, supra.*

**22.** The language of Section 17(a) was adopted almost word for word when the SEC drafted Rule 10b–5, promulgated under the authority of Section 10(b) of the 1934 Act. *See SEC v. Texas Gulf & Sulphur Co., supra*, p. 867. Rule 10b–5 provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 CFR § 240. 10b–5.

Although Rule 10b–5 is directed at fraud "in connection with the purchase or sale" of securities, Section 17(a) reaches fraud "in the offer or sale" of securities. To imply a private right of action under Section 17(a)(1) might undermine the purchaser-seller requirement of Rule 10b–5. Section 17(a)(3), however, is directed at fraud "upon the purchaser," and therefore a private cause of action under Section 17(a)(3) would not nullify the limitations on actions brought under Rule 10b–5.