David RISPO and Cora Lee Rispo, his wife

v.

SPRING LAKE MEWS, INC.; George Sands; David Friedman and Urban Systems Development Corporation.

Civ. A. No. 77–3064.

United States District Court, E. D. Pennsylvania.

Feb. 26, 1980.

Blasco Mattioni, Philadelphia, Pa., for plaintiff.

Richard M. Squire, Joseph M. Donley, Harvey Bartle, III, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This diversity action is based upon alleged violations of federal and state securities laws as well as common law tort and breach of contract claims. Defendants moved to dismiss the complaint or alternatively to transfer the case to the United States District Court for the District of New Jersey. Both sides have submitted lengthy briefs, supported by depositions, affidavits, and exhibits. Since I find it necessary to consider them, I shall treat defendants' motion to dismiss as one for summary judgment under Fed.R.Civ.P. 56. For the reasons which will be set forth, I will grant this motion in part, refuse it in part, and grant the motion to transfer the remaining portions of the suit to New Jersey.

### I. The Factual Background

In early 1976, James Norris and Frank Colletti[1] formed defendant Spring Lake Mews, Inc. (Mews) to purchase condominium property from Urban Systems Development Corporation (USDC)[2] for 1.6 million dollars with $50,000 as a down payment. Colletti was the secretary of Mews and owned 100 percent of its stock while Norris was the president. Under the terms of the agreement, if Mews was unable to close on May 3, 1976, the down payment would be forfeited.

It soon became apparent that Colletti and Norris would be unable to obtain the financing necessary to effectuate the closing. As a result, Colletti executed a "stock repurchase and financing agreement" with the defendant, George Sands, under the terms of which Sands acquired all the outstanding stock of Mews and Colletti and Norris submitted their resignations as officers in exchange for Sands' irrevocable letter of credit to cover the closing. The agreement further provided that Colletti would have the option to repurchase the stock of Mews on or before June 2, 1976, for 1.75 million dollars. If Colletti failed to repurchase the stock, he was to receive a partial return of the $50,000 deposit.

Having secured adequate financing, Mews acquired the condominium property. Subsequently, USDC learned that the $50,000 check originally used as a down payment by Colletti and Norris had "bounced." Consequently, Colletti had to seek alternative funding to replace the dishonored check in order to retain the option to repurchase the Mews stock from Sands. To obtain the money, Colletti, Norris, and William Walker, representing themselves as the sole shareholders of Mews, negotiated a loan

---

1. Colletti, Norris, and Walker were not joined as defendants in this lawsuit, presumably to preserve complete diversity.

2. Westinghouse Electric Corporation (Westinghouse) and USDC have moved to substitute Westinghouse as a party defendant in place of USDC. Until December 31, 1976, USDC was a Delaware corporation and a wholly-owned subsidiary of Westinghouse, which is a Pennsylvania corporation. As of that date, however, USDC merged with Westinghouse, losing its corporate identity and simply becoming a division of Westinghouse. Westinghouse assumed all of the obligations of USDC. Since USDC no longer existed once the merger was effected, it no longer had the capacity to sue or be sued thereafter with respect to matters unrelated to the winding up of its corporate affairs. *Akwell v. Eiger*, 141 F.Supp. 19, 22 (S.D.N.Y.1956); see also *Sevits v. McKiernan-Terry Corporation*, 264 F.Supp. 810, 811–12 (S.D.N.Y.1966). Because this action was instituted after the merger, the proper defendant is Westinghouse, which agrees to be substituted voluntarily without the necessity of formal service of process. For these reasons, I dismiss the action as to USDC and substitute Westinghouse as a party defendant. Additionally, the parties have stipulated that Westinghouse be substituted as a party defendant in place of USDC.

transaction with plaintiffs in Philadelphia. Under the terms of this agreement, plaintiffs advanced to Colletti and Walker $50,000 in exchange for a $60,000, 30-day note purportedly from Mews and signed by Colletti, who represented he was an officer of Mews, and Colletti's obligation to transfer three shares of Mews stock—two shares to David Rispo and one to plaintiffs' counsel [3]. Plaintiffs contend that this transaction was based on the representations of Colletti, Norris, and Walker that they were the officers and directors of Mews, that Colletti was the sole stockholder, that they were acting for Mews, and that George Sands was only an interim lender. These facts were allegedly confirmed by defendant David Friedman, an attorney representing Mews, Colletti, and Sands, in a conversation with plaintiffs' counsel prior to execution of the loan agreement, and by an employee of USDC. Colletti did not exercise his option to repurchase the stock of Mews. Defendants, Mews, Sands, Friedman, and USDC, have not honored plaintiffs' requests for satisfaction of the note nor have they delivered the shares of Mews stock on the ground that at no time were Colletti, Norris, or Walker authorized to bind Mews, Sands, or Friedman with respect to the loan.[4]

Plaintiffs initiated this action alleging violations under section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934, common law fraud, and breach of contract. Defendants move to dismiss on the basis that this court lacks both subject matter and in personam jurisdiction over defendants; that plaintiffs have failed to plead fraud with sufficient particularity; and that venue is not properly within this forum. Alternatively, they move to transfer this action to the District Court of New Jersey pursuant to 28 U.S.C. § 1404(a). I shall consider each argument separately.

## II. Discussion

Defendants have advanced multi-faceted arguments to support their motion. Defendants first maintain that this court lacks subject matter jurisdiction over any claim that the Securities Act of 1933 (hereinafter the 1933 Act) or the Securities Exchange Act of 1934 (hereinafter the 1934 Act) was violated because the instant transaction does not involve "securities" under either law. Since this court has diversity jurisdiction, the questioning of subject matter jurisdiction based upon the securities acts serves little purpose. However, defendants arguments that the transaction does not involve misrepresentation or fraud in connection with the purchase or sale of securities within the Acts, raised in the jurisdictional setting, are crucial to a determination of the defendants' motion for summary judgment. *Provident National Bank v. Frankford Trust Co.*, 468 F.Supp. 448 (E.D. Pa.1979); *Annot.*, 39 A.L.R.Fed. 357, 368 (1978).

---

**3.** As additional collateral, the Walkers agreed to deliver executed deeds to two parcels of property, title to eight motor vehicles, and Ford Motor Co. stock worth over $60,000 to plaintiffs' counsel, as escrowee.

**4.** In addition to this action, the controversy has spurred a panoply of litigation involving some or all of the present parties. On June 22, 1976, the Walkers obtained a temporary restraining order in the Superior Court of New Jersey, Chancery Division, against plaintiffs, preventing them from conveying the property the Walkers had provided as collateral for the loan. The Rispos counterclaimed under the agreement and were granted summary judgment for $60,000 plus attorney's fees of $12,000.

Then, George Sands sued Colletti, Norris, and Walker for malicious interference with the Mews condominium project and obtained a permanent injunction against the Colletti group.

The Rispos then sued Mews and Colletti on the note in the Philadelphia Court of Common Pleas and secured a default judgment. In an attempt to collect on this judgment, they instituted suit against the two defendants in the Superior Court of New Jersey, Law Division, on December 14, 1976. That action is still pending. Nine days later, an action was brought against Mews in the United States District of New Jersey on the note. To date, various depositions have been taken and the case is active. It is this latter action to which defendants desire to transfer the present matter.

A. The Promissory Note and Promise to Deliver Stock as "Securities"

The defendants allege that the record fails to show any basis upon which relief can be granted under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.10b–5 (1977) promulgated under the 1934 Act.

Defendants raise a number of arguments. Initially, they contend that neither the promissory note given in exchange for the loan nor the promise to deliver three shares of Mews stock constituted a security.

Plaintiffs rely upon the literal words of section 2(1) of the 1933 Act, 15 U.S.C. § 77b(1), that a security means "any note" or "evidence of indebtedness" in arguing that the promissory note given to evidence the $50,000. loan is a security. Defendants counter that the definitional sections of the Acts are preceded by "unless the context otherwise requires" and that under the facts here, this exclusion applies.[5]

The test to determine whether a promissory note is to be considered a security depends upon whether the note has a commercial or investment purpose in the context of the transaction. *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973).[6] A note has an investment character when the scheme involves "an investment of money in a common enterprise with profits to come solely from the efforts of others". *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *S. E. C. v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In *Lino v. City Investing Co.*, the United States Court of Appeals for the Third Circuit held that notes used to purchase a franchising agreement were not securities, stating:

After considering the noted decisions and the arguments of both parties, it is our view that the legislation was not intended to cover the transaction which occurred here. All of the definitional sections involved. in this case are introduced by the phrase *"unless the context*

5. Additionally, defendants argue that the promissory note is not a security under section 10(b) of the 1934 Act as defined by section 3(a)(10) of that Act. The language is virtually identical to the 1933 Act except for the provision which exempts notes maturing within nine months. 15 U.S.C. § 78c(a)(10). Since the promissory note in the instant case was due upon demand within 30 days, it arguably falls within this exemption. However, some cases hold that this section exempts the security for registration purposes but not for the 1934 Act's anti-fraud provisions. See *Sanders v. John Nuveen & Co.*, 463 F.2d 1075 (7th Cir.), cert. denied 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); *Lawrence v. S.E.C.*, 398 F.2d 276 (1st Cir. 1968). Even if there is no automatic exclusion from the anti-fraud requirements, my later discussion concerning the 1933 Act applies equally to the 1934 Act to show that the commercial rather than investment context of the transaction takes this case outside the federal securities acts. See *United California Bank v. T. H. C. Financial Corp.*, 557 F.2d 1351, 1356–57 (9th Cir. 1977); *Provident Nat'l Bank v. Frankford Trust Co.*, 468 F.Supp. 448 (E.D.Pa.1979).

6. The commercial-investment test of a security is followed by the Third, Fifth, Seventh and Tenth Circuits. *McGovern Plaza Joint Venture v. First of Denver Mortgage Investors*, 562 F.2d 645 (10th Cir. 1977); *C. N. S. Enterprises, Inc. v. G. & G. Enterprises, Inc.*, 508 F.2d 1354 (7th

Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975); *McClure v. First Nat'l Bank*, 497 F.2d 490 (5th Cir. 1974), cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973).

The Ninth Circuit applies a risk capital test and focuses upon six factors in determining whether a security exists in the context of a particular transaction: (1) time, (2) collateralization, (3) form of the obligation, (4) circumstances of issuance, (5) relationship between the amount borrowed and the size of the borrower's business, (6) contemplated use of the funds. *United California Bank v. T. H. C. Financial Corp.*, 557 F.2d 1351, 1358–59 (9th Cir. 1977); *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1257 (9th Cir. 1976).

In a recent case, Judge Luongo of this district, acknowledged that the use of the risk capital test may be a proper analysis in the banking or loan context even where this Circuit has traditionally used a commercial-investment test. *Provident Nat'l Bank v. Frankford Trust Co.*, 468 F.Supp. 448 (E.D.Pa.1979).

If the risk capital test is applied to the instant case an advance of funds for 30 days between private parties for a down payment to purchase a condominium would not constitute an investment but a loan for which there is no recourse under the securities acts.

*otherwise requires.*" The commercial context of this case requires a holding that the transaction did not involvé a "purchase" of securities. These were personal promissory notes issued by a private party. There was no public offering of the notes, and the issuer was the person claiming to be defrauded. The notes were not procured for speculation or investment, and there is no indication that FI was soliciting venture capital from Lino.

Id. at 694–5 (emphasis in original).

■ In the case at bar, a promissory note was given to evidence a simple commercial loan for 30 days. The money was advanced upon the alleged strength of the corporation, David Rispo's personal friendship with Walker, and collateral extended by Walker consisting of Ford Motor Co. stock worth $60,000, as well as title to two parcels of land and several cars. The promissory note was issued by Mews, a private party, without any public offering. The money obtained was used to preserve an option on a real estate purchase. Plaintiffs' reasonable expectation of profits is what normally would be expected in a high risk, short term commercial loan. Since there was a fixed rate of interest, the profit was not the kind of speculative investment based on the entrepreneurial or managerial efforts of others. As one court aptly stated:

> In one sense every lender of money is an investor since he places his money at risk in anticipation of a profit in the form of interest. Also in a broad sense every investor lends his money to a borrower who uses it for a price and is expected to return it one day.

*C. N. S. Enterprises, Inc. v. G. & G. Enterprises, Inc.*, 508 F.2d 1354, 1359 (7th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975).

Therefore, I conclude that the note here, taken in the context of a commercial loan, cannot be construed to be a security. I am supported by many cases which have similarly held. See *McClure · v. First National Bank*, 497 F.2d 490 (5th Cir. 1974), cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43

L.Ed.2d 402 (1975); *Bellah v. First National Bank*, 495 F.2d 1109 (5th Cir. 1974); *Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795 (2d Cir. 1972), cert. denied, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 416 (1973); *Tri County State Bank v. Hertz*, 418 F.Supp. 332 (M.D.Pa.1976).

Plaintiffs urge that the promise to deliver three shares of Mews stock as a bonus for the loan should be construed as a security within the 1933 and 1934 Acts under the term "warrant or right to subscribe to or purchase" securities. 15 U.S.C. § 77b(1) and 15 U.S.C. § 78c(a)(10).

■ A "warrant or right to subscribe to or purchase" denotes a very specific sort of written agreement which generally allows the holder to purchase a security at a future date. The promise to deliver the stock coupled with the personal loan is not the same sort of transaction as a rights offering. Even if the promise to deliver could be construed to be a warrant, the commercial-investment context of the transaction is ultimately determinative of the existence of a security. As previously discussed, the promise to deliver stock coupled with a short term loan does not constitute an investment covered by the securities acts.

In a recent Ninth Circuit case, notes payable upon demand within 30 days and a "put" or warrant letter which allowed a company to purchase future notes were not considered securities because no risk capital was involved. *United California Bank v. T. H. C.*, 557 F.2d 1351 (9th Cir. 1977).

**B. The Promise to Deliver Stock as a "Sale or Purchase" of a Security**

Even assuming the existence of securities, the defendants argue that neither the 1933 or 1934 Acts should be applied since a promise to deliver three shares of Mews stock did not involve a "sale or purchase" under the Acts.

Section 2(3) of the Securities Act of 1933 states:

> When used in this title, unless the context otherwise requires—

(3) the term "sale" or "sell" shall include every contract of sale or disposition of a security or interest in a security, for value. The term "offer to sell," "offer for sale," or "offer" shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value. . . .

Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value."

15 U.S.C. § 77b(3).

Plaintiffs claim that the Mews stock was a security given as a bonus on account of the promissory note. The well-pleaded allegations in the complaint represent that plaintiffs loaned Spring Lake Mews, Inc., $50,000. in exchange for a 30-day note for $60,000. and a promise to deliver three shares of Spring Lake Mews, Inc. stock. David Rispo's deposition indicates that the delivery of Mews stock was considered as a gift or bonus.

> As far as I was concerned it [Coletti's promise to deliver the Mews stock] was like him saying he was going to give me two Volkswagen cars as cuff links. It didn't matter to me one way or the other. That is what he said. I said, 'Okay thank you very much.'

Deposition of David Rispo at pp. 26–27.

Plaintiffs rely heavily on the case of *Lawrence v. S. E. C.*, 398 F.2d 276 (1st Cir. 1968), in which a broker's written commitment to deliver shares of stock was considered a sale under the 1933 Act. There the broker borrowed $5,000., repayable in 90 days, interest free. Additionally, the broker promised the lender half of the shares which the broker was to receive, salable in the future. The court analogized the written commitment to deliver shares to a warrant or bonus. In the context of the transaction in *Lawrence*, however, the shares were actually interest for the loan. The theory that "nothing in life is free" transformed the securities bonus into consideration for the sale cognizable under the securities acts. See 1 Loss, *Securities Regulation*, at 516 (1961). In the instant case, however, the stock did not serve as interest since a fixed, high rate of interest was already figured into the loan.

Once again the defendants argue that the analysis of the transaction as investment or commercial, rather than a literal reading, is determinative of whether this case falls within the securities acts. The definition of sale is prefaced with the language "as the context otherwise requires." Defendants contend that the promise to deliver the three shares was only "minimally tangential" or "merely incidental" to the loan agreements and the commercial nature of this loan cannot be transformed into a securities deal by the promise of bonus stock which was never delivered.

Cases in which a bank receives a pledge of stock as collateral for a loan provide valuable insight into situations where the context requires a finding of exclusion from the securities acts. I acknowledge that the parallel of a pledge of stock with this case of a promise to deliver stock is not altogether perfect. A pledge is an actual delivery which becomes legally effective if a loan is not repaid rather than an unconditional promise of a future delivery, as in the instant case. However, I think that the economic realities of these transactions are virtually identical since, in both, title is not presently transferred.

A split in the Circuits exists on the issue of whether a pledge of stock as collateral in a loan transaction brings the case within the securities acts. The Second and Sixth Circuits hold that the pledgee's risk that the stock has value and will continue to have value is identical to the risk run by an investor and thus that a pledge is analogous to a sale for purposes of the securities acts. *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir. 1979); *Mallis v. FDIC*, 568 F.2d 824 (2d Cir. 1977), cert. dismissed sub nom. *Banker's Trust v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); *United States v. Gentile*, 530 F.2d 461 (2d Cir.) cert. denied 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).

On the other hand, the Fifth and Seventh Circuits hold the basic character of a transaction which is a loan is not changed by the possibility that the lender may end up owning the securities. The risk to the lender is held to be that which accompanies any loan and not the risk undertaken by an investor. Thus, a transaction in which stock is pledged as security for a loan is not governed by the securities acts. See *Lincoln National Bank v. Herber*, 604 F.2d 1038 (7th Cir. 1979); *National Bank of Commerce of Dallas v. All American Assurance Co.*, 583 F.2d 1295 (5th Cir. 1978); *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974) (en banc), cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975).

■ The Third Circuit has not yet faced the issue. However, I am persuaded that the analysis of the Fifth and Seventh Circuits is proper, especially in light of the restrictive view of securities law recently enunciated by the Supreme Court. See, e. g., *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Collins v. Signetics Corp.*, 605 F.2d 110, 113 (3d Cir. 1979).

Plaintiffs' allegations of securities violations involve "yet another attempt to convert the securities laws into something which they are not. The securities laws do not afford general relief when commercial loans turn out to have been unwisely made, nor are they a source of general federal jurisdiction." *AMFAC Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 428 (9th Cir. 1978).

■ Since I find that no purchase or sale of a security existed in the instant transaction, defendants' argument that no private cause of action exists under 17(a) of the 1933 Act need not be addressed. I only note that the question has been specifically left open several times by the Supreme Court of the United States,[7] and it is now the subject of a definite split of authority.[8]

Similarly, the issue of whether the requirements of 10(b) and Rule 10b–5 have been satisfied need not be discussed.[9]

## C. State Securities Violations

■ Plaintiffs claim violations of the Pennsylvania and New Jersey securities laws. Although the complaint fails to indi-

---

**7.** *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (private cause of action under section 17(a) of the 1933 Act was an issue in the Seventh Circuit case which the Supreme Court left untouched); *Blue Chip Stamp v. Manor Drug Stores*, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed. 539 (1975). Recently, the Supreme Court held that no implied private cause of action exists under Section 17(a) of the 1934 Act. *Touche Ross Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The Third Circuit has also expressly left open the issue of an implied private cause of action under section 17(a). *Schultz v. Cally*, 528 F.2d 470, 475 n. 11 (3d Cir. 1975).

**8.** Many cases have strictly construed the 1933 Act holding that no private cause of action exists. See, *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152 (8th Cir. 1977), cert. denied 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Mendelsohn v. Capital Underwriters, Inc.*, (N.D.Cal.1980) 48 U.S.L.W. 2493; *Dyer v. Eastern Trust and Banking Co.*, 336 F.Supp. 890, 903–05 (D.Me.1971).

Numerous courts argue persuasively that a private cause of action under section 17(a) is necessary to protect fully persons defrauded in the offer or sale of securities. See, *Kirshner v. United States*, 603 F.2d 234 (2d Cir. 1978); *Demoe v. Dean Witter & Co.*, 476 F.Supp. 275 (D.Alaska 1979); *Dorfman v. First Boston Corp.*, 336 F.Supp. 1089 (E.D.Pa.1972).

For an excellent discussion of the split in the circuits on this issue, see Note, 51 *Temp.L.Q.* 912, 915–16 n. 21 (1978).

**9.** The elements for a cause of action under these sections include: 1) a misstatement or omission made by the defendant in connection with the purchase or sale of a security, *Straub v. Vaisman & Co., Inc.*, 540 F.2d 591 (3d Cir. 1976); 2) regarding a material fact, *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir.), cert. denied 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); 3) where the defendant had scienter-intent to deceive, manipulate, or defraud, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); and 4) where there is reliance by the plaintiff, *Rochez Bros. v. Rhoades*, 491 F.2d 402 (3d Cir. 1974).

cate any specific section of the Pennsylvania Securities Act which defendants allegedly infringed, plaintiffs' brief in opposition to the motion to dismiss cites Pa.Stat. Ann. tit. 70 § 1–401. The sections of the New Jersey Securities Act which defendants allegedly violated are 49 N.J.Stat.Ann. §§ 3–52, 3–71 (West).

Section 1–401 of the Pennsylvania Act and section 3–52 of the New Jersey Act are basically identical in imposing liability for fraud "in connection with the offer, sale or purchase of any security . . . directly or indirectly." Both of these state provisions were modeled after section 101 of the Uniform Securities Act which is based upon the federal securities acts, rule 10b–5 of the 1934 Act and section 17(a) of the 1933 Act. See Comments to the Uniform Securities Act, 7A *Uniform Laws Annot.* at 568 (1978). Since I have concluded that there is no cause of action under rule 10b–5 and section 17(a), it follows there is no cause of action under the similarly worded state statutes.

Additionally, plaintiffs argue that the civil liabilities section of the New Jersey Securities Act, 49 N.J.Stat.Ann. § 71(a)(2) and (b), is violated. This section imposes liability upon "(a) any person who . . . (2) offers or sells a security by means of any untrue statement of [a] material fact . . ." and "(b) every person who directly or indirectly controls a seller [is] liable under paragraph (a) . . .. 49 N.J.Stat.Ann. § 71(a)(2) and (b).[10] Thus, liability is predicated upon the fact that an offer or sale of a security has taken place. As my opinion makes clear, no liability can be established under this section since no offer or sale occurred in the context of the instant transaction.

**D. Personal Jurisdiction over the Defendants/Motion to Transfer**

Plaintiffs' state law claims involving allegations in common law fraud and breach of contract remain viable under diversity jurisdiction. However, defendants original motion sought to dismiss on the basis of lack of in personam jurisdiction over defendants or alternatively to transfer to the District of New Jersey where a suit on the note is pending. Subsequently, all parties have stipulated that the suit before me be transferred and consolidated with the matter currently pending in the District of New Jersey. I will respect the agreement of the parties and transfer the case. However, consolidation is within the sole discretion of the judge handling the matter in New Jersey and I will not rule on that part of the motion.

The stipulation further provides that "the parties do not waive any right to take discovery and that no party will be bond by any discovery already taken in *Rispo v. Spring Lake Mews, Inc.*, (D.N.J.C.A.76–2432), to which he or it was not a party." Discovery is similarly within the competence and discretion of the court in New Jersey. I will not presume to dictate how discovery should be handled after this case is transferred. I note that several motions to compel discovery are pending, having been suspended until after the decision on the motion to dismiss was made. I will not rule on these discovery motions so that the New Jersey court can proceed as it sees fit.

**III. Conclusion**

For the reasons expressed in this opinion, I will dismiss plaintiffs' federal and state securities claims. The remaining state common law claims are transferred to the federal district court for New Jersey pursuant to the stipulation of counsel. Consequently, defendants' motions to dismiss for lack of in personam jurisdiction or. to transfer are now moot. Additionally, defendants' claim that the complaint failed to plead fraud with specificity does not merit discussion in light of my treatment of defendants' motion as one for summary judgment.

---

**10.** Pennsylvania has a comparable provision for civil liability. Pa.Stat.Ann. tit. 70 § 1–501.

These sections are similar to the Uniform Securities Act section 410.